# Smith, Appellant, *v.* Crum Lynne Iron and Steel Company.

*Corporation — Contract — Authority of superintendent — Compromise of claim.*

The superintendent of a steel company has no power to bind the corporation by a contract to pay to an injured employee what would practically be a pension to the employee during his life.

In an action by an employee of a steel company against the company it appeared that the plaintiff had been injured while in the employ of the defendant. He claimed that in consideration of his agreeing not to sue the company for his injuries, the superintendent of the company had agreed to give him certain employment. In his statement he substantially averred that the superintendent had promised him work in such capacity as he had been working at the time of the injury, at which time he was working for $7.50 per week, although he had previously worked as a heater for a much larger sum; that defendant promised to pay him at the rate of $7.50 per week until he was able to go to heating again at full wages ; that until this time arrived, if it ever did arrive, this rate of pay was to continue ; that whether he was fit for light employment, or for full work as a heater, was to be determined by a physician named ; that plaintiff offered and was willing to keep and perform his side of the contract, yet defendant broke its part of the contract and discharged plaintiff. *Held,* that the contract was too vague in its terms to be enforced.

Argued Feb. 10, 1904. Appeal, No. 261, Jan. T., 1903, by plaintiff, from order of C. P. Delaware Co., Dec. T., 1902, No. 80, refusing to take off nonsuit in case of George W. Smith v. Crum Lynne Iron and Steel Company. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Affirmed.

Assumpsit for breach of contract of employment. Before SAVIDGE, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

A nonsuit was entered chiefly on the ground that the superintendent had no authority to make the contract alleged in plaintiff's statement.

*Error assigned* was the order of the court refusing to take off nonsuit.

*Albert Dutton MacDade* and *O. B. Dickinson*, for appellant.— Corporations are liable for the acts of their servants while en-

gaged in the business of their employment in the same manner and to the same extent as individuals are liable under like circumstances : Merchants' Bank v. State Bank, 77 U. S. 604; McHose v. Earnshaw, 55 Fed. Repr. 584 ; Indianapolis Rolling Mill v. St. Louis, etc., R. R. Co., 120 U. S. 256 (7 Sup. Ct. Repr. 542 ) ; Turnpike Co. v. Ry. Co., 194 Pa. 144 ; Steamboat Co. v. McCutcheon, 13 Pa. 13 ; Dougherty v. Hunter, 54 Pa. 380 ; Culver v. Pocono Spring Water Ice Co., 206 Pa. 481 ; Bank v. Dandridge, 25 U. S. 64 ; R. R. Co. v. Howard, 74 U. S. 392 ; The Sappho, 94 Fed. Repr. 545 ; Patterson v. Robinson, 116 N. Y. 193 (22 N. E. Repr. 372) ; Campbell v. Bridge Co., 23 Pa. Superior Ct. 138; Boyd v. American Carbon Black Co., 182 Pa. 206 ; Bangor, etc., Ry. Co. v. Slate Co., 203 Pa. 6 ; R. R. Co. v. Staub, 7 Lea (Tenn.), 397 ; Penna. R. R. Co. v. Keokuk, etc., Bridge Co., 131 U. S. 371 (9 Sup. Ct. Rept. 770).

*Joseph H. Hinkson*, with him *Walter E. Rex*, for appellee.— The superintendent was without authority to make the contract : Farmers' Bank of Bucks Co. v. McKee, 2 Pa. 318 ; Pittsburg Melting Co. v. Reese, 118 Pa. 355 ; Dougherty v. Hunter, 54 Pa. 380 ; Worthington v. Ry. Co., 10 Pa. Superior Ct. 117 ; Twelfth St. Market Co. v. Jackson, 102 Pa. 269 ; Bangor & Portland Ry. Co. v. American Bangor Slate Co., 203 Pa. 6 ; B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579 ; Allegheny County Workhouse v. Moore, 95 Pa. 408 ; Ins. Bank of Columbus v. Bank of U. S., 4 Clark, 125 ; Jackson v. Cartwright Lumber Co., 2 Pa. Dist. Rep. 680 ; Harvey v. Schuylkill Trust Co., 199 Pa. 421 ; Clarkson v. Keystone Oil Cloth Co., 8 Pa. Dist. Rep. 593 ; Curry v. Claysville Cemetery Assn., 5 Pa. Superior Ct. 289 ; Sitler v. Spring Garden Mut. Fire Ins. Co., 18 Pa. Superior Ct. 139 ; Erthal v. Glueck, 10 Pa. Superior Ct. 402 ; Johnston v. Elizabeth Bldg. & Loan Assn., 104 Pa. 394 ; Helping Hand Bldg. & Loan Assn. v. Buss & White, 13 Pa. Superior Ct. 343.

OPINION BY MR. JUSTICE DEAN, March 21, 1904 :

The defendant is a manufacturing corporation managed by a president, board of directors and a superintendent. For some weeks prior to September 17, 1900, its rolling mill had been closed for repairs ; the plaintiff had then, for a time, been

employed about the mill in assisting to make the repairs; he helped to do stone and brick work as well as other jobs about the mill to put it in running condition. For such work he received $7.50 per week. On the day mentioned, while assisting other workmen in removing a pile of iron bars the pile fell upon him and seriously injured his leg. His time due him up to the accident was one week and one day. The first day after the accident defendant sent him his week's pay which he accepted without complaint; the next pay day defendant placed his name on the pay roll and again sent him his weekly wages, which he refused to accept; defendant continued each pay day thereafter to place plaintiff's name on the weekly pay roll and to set aside for him his weekly wages, as though he were able to work and earning them; this continued until October 20, 1900, a period of about four weeks. On the last named day, through his attorney he presented a claim for damages occasioned by his injuries. The defendant then dropped his name from the pay roll and stopped setting aside money for him. The attorney for defendant, to whom this claim for damages had been referred, denied in writing any liability on the part of the company. While the plaintiff's wife had been in communication with his attorney in reference to his claim, he himself denied that he had authorized her to do so. About this time, Hudson, the superintendent of defendant company, called on plaintiff, but nothing was said between them about money matters. On November 23, 1900, plaintiff in company with his wife and father-in-law called on the superintendent at his office and there had a conversation with him. Plaintiff asked him for the money that had been set aside and the superintendent replied, they could not pay him money to bring a lawsuit against the company; plaintiff said he did not intend to sue; the superintendent then said he would make him an allowance of $7.50 a week until he was able to do some light work and then he would put him back at his old job as a heater, which seemed to be satisfactory to plaintiff. The next day plaintiff's wife went to the office and drew $30, all that then remained set aside on the books, and the next pay day drew the balance standing to his credit. On December 1, 1900, plaintiff's wife delivered to the superintendent a letter from her husband, in which he stated he had no claim for damages

against the company.    The weekly allowance of $7.50 continued to be paid to plaintiff up until March 31, 1901, when he stopped work without notice.    He did not again tender his services.    In the summer of 1901 the president of the company ordered the allowance stopped, but the superintendent continued it, he says, because plaintiff had a large family and was still suffering from the injury to his leg ; in September, 1902, two years after the accident, the president again ordered the allowance stopped.    In October following, an agent of defendant called upon plaintiff and asked him to return to work but he did not do so, refused to do any work about the mill and immediately after brought this suit.

This is a statement of what was actually done by the parties from the time plaintiff was injured up until he ceased work for defendant.    Leaving out of view the contradictions in the evidence of both of them, we must resort to the pleadings to at least ascertain with approximate certainty, the averments of both.    Plaintiff avers that Hudson, the authorized agent of defendant, undertook and promised him work in such capacity as he had been working at the time of the injury, at which time he was working for $7.50 per week ; that defendant promised to pay him at that rate until he was able to go to heating again at full wages ; that until this time arrived if it ever did arrive, this rate of pay was to continue ; that whether he was fit for light employment or for full work as a heater was to be determined by Dr. Bryan, a physician ; that plaintiff offered and was willing to keep and perform his side of the contract, yet on November 1, 1902, defendant broke its part of the contract and discharged plaintiff.

Defendant denies any promise or agreement on its part in the nature of a contract or a promise to pay for such services as plaintiff rendered ; avers that such payments as were made to him were gratuitous ; denies any authority on the part of its agent or superintendent to contract with plaintiff for payment of what would be equivalent to a life pension, and further avers, that even if made such contract is altogether too indefinite in its terms for enforcement.

Taking all the evidence before us bearing on the issue and giving to it all the significance that can properly be claimed for it, there is not sufficient to sustain a verdict for plaintiff.

1. There is no authority conferred by the corporation on Hudson, its superintendent, to make such a contract for and on behalf of his principal. What unauthorized promises the agent chose to make, if he did make them as alleged, and they could be enforced at all, they must be enforced against him. It is clear that the alleged promise was practically to pension the plaintiff during his life. From the very nature and terms of such a contract it was beyond the scope of the superintendent's general authority; we will not say the corporation might not have delegated such authority to its agent, but if delegated, it must expressly appear from the minutes or other records of the company; ordinarily, it will not be inferred from the nature of his usual duties, nor will ratification by any one officer be sufficient to supplant corporate action in such an exceptional transaction. There was not shown here, either precedent authority or subsequent ratification: B. & O. Employee's Relief Association v. Post, 122 Pa. 579; Twelfth Street Market Co. v. Jackson, 102 Pa. 269.

2. But assuming that the agent did not act without authority, how shall the contract be enforced? Look at its terms. No definite period for its termination is fixed; plaintiff will not fix positively the date of its ending, but the inference is, it was to end only with his life; that is, whether disabled by old age, or decrepitude from any cause, the weekly payments were to be kept up. Such terms are so harsh as to be unreasonable. But what is the rate of pay? Part of the time, according to his statement he would earn nothing, part of the time he would earn $7.50 per week, part of the time $25.00 per week,—are the averages to be taken as the measure of his weekly payments or is he to be paid according to his earning power when at work and $7.50 only when idle? We think there is wanting sufficient precision in the contract to render it capable of inforcement, just as in Ogden v. Philadalphia, etc., Traction Co., 202 Pa. 480.

But outside of the legal objections, the facts as stated by the witnesses on both sides, show that plaintiff, through no negligence or fault of defendant, was injured while in their employ; both thought at the time the injury was not serious and that he would soon recover; defendant sympathized with him in his misfortune and aided him by continuing his weekly wages

which it thought would be only a temporary necessity; the payments were continued for two years when, whether because plaintiff refused to continue longer in their employ or because he was discharged, they ceased. In the meantime defendant had paid plaintiff over $900 for two years' service during a large part of which time he was wholly incapacitated. It seems to us that the only plausible reconciliation of the testimony is on the theory, that both parties assumed, that the defendant was not legally liable, that plaintiff had met with a misfortune which would temporarily incapacitate him in earning wages and that the wants of himself and family prompted defendant to liberality in making good a loss which it was not legally bound to do.

All the assignments of error are overruled and the judgment is affirmed.