## Manross v. Warr-Penn Refining Company

*T. L. Hampson* and *Harold S. Hampson,* for plaintiff.
*Bordwell & Eldred,* for defendant.

ARIRD, P. J., August 31, 1932.—This is an action in assumpsit.

Summons issued January 8, 1932, and same day plaintiff's statement filed.

Summons served January 11, 1932.

January 22, 1932, affidavit of defense filed.

May 9, 1932, case was called for trial, jury sworn and testimony taken on part of plaintiff.

May 11, 1932, plaintiff's testimony closed. Defendant moved for a compulsory nonsuit for the following reasons:·

1. The plaintiff has not established his right to recover.

2. The plaintiff has shown no authority in R. G. Williamson to bind the defendant company in the alleged contract.

3. The plaintiff has produced no evidence from which the jury could compute his damages.

4. There was and is no consideration for the alleged contract.

5. The probata and allegata are at variance, and the proofs do not establish the contract declared upon.

The second and fourth paragraphs of plaintiff's statement read as follows:

"2. That on or about March 5, 1930, the said defendant company, by R. G. Williamson, its superintendent and treasurer, hired, employed and agreed to pay the said plaintiff, Bert Manross, to build and construct a device that would save to the defendant company the fuller's earth and dust used for filtering oils when said fuller's earth and dust were being burned to consume the refuse therein to fit them for further use, and .which earth and dust at that date were being lost to the defendant company by its inability to collect and recover said fuller's earth and dust for future use after such burning."

"4. That the price or sum to be paid to the plaintiff for the invention and erection of a suitable and efficient dust collector was agreed by and between the plaintiff, Bert Manross, and the defendant company, by R. G. Williamson, its superintendent and treasurer, to be one-half of the saving effected thereby over a period of one year when used in said refinery."

Now the defendant company, as the name indicates, was an oil refining company. The plaintiff, Manross, was an employe of the defendant company from January 1, 1928, to July 3, 1931. His duties were boilermaker, repair man and iron worker. His compensation was forty-two dollars per week, which he was paid regularly each week during that period. The defendant company purchased material, employed and paid other laborers. Any work that the plaintiff did toward constructing the device in question was done while he was employed and working for the defendant.

Now the plaintiff, in our opinion, could not recover unless he had an express contract with the defendant company of which the defendant company had knowledge, but under the plaintiff's own testimony he simply had casual conversations with Mr. R. G. Williamson, who was superintendent and treasurer of said company. The question was asked plaintiff as follows: "Q. What was your work around there? A. Repair man, tank work, building and doing my own laying out."

Now this plant or refinery was situate at what is known as Rogertown, Mead Township, Warren County, Pa. In the month of March, 1930, the plaintiff, Manross, while in the employ of the defendant company, was putting a roof on a tank which belonged to the defendant company. The plaintiff's testimony tends to show that Manross was to make a suitable and effective dust collector which would save the company from a loss of about $20,000 per year, and, further, that if the plaintiff made such a collector he was to receive one-half of said sum, to wit, $10,000, for a period of one year. Now this alleged contract was simply an oral agreement between R. G. Williamson and the plaintiff, Manross. While it is in evidence that Mr. Campbell was director, vice-president and manager, he saw Mr. Manross working around the plant as usual, but there is not a scintilla of evidence that Campbell had any knowledge of any such alleged agreement until this action was begun, and there is not a scintilla of evidence that the defendant company had any knowledge of such agreement. Here was a laboring man in the employ of the defendant company, and, so far as the general manager had any knowledge, was performing his usual duties.

Mr. Williamson was called as under cross-examination, and, as I remember it, stated that Manross wanted to secure a patent and asked for money for that purpose, and Williamson, in order to help him out, wrote the letter that was offered in evidence.

In Zullinger v. Grebe, 72 Pa. Superior Ct. 209, Mr. Justice Porter wrote the opinion of the court. It was there held:

"A statement in assumpsit must be supported by evidence at the trial, proving not only a claim against the defendant but the particular facts averred in the plaintiff's declaration."

In Smith v. Crum Lynne Iron and Steel Co., 208 Pa. 462, Mr. Justice Dean wrote the opinion of the court. It is there said in the syllabus:

"The superintendent of a steel company has no power to bind the corporation by a contract to pay to an injured employe what would practically be a pension to the employe during his life."

If it were possible for plaintiff to recover in this case, in our opinion, it would be necessary for him to show that such an agreement was along the lines of the duties of the superintendent, unless the officers and directors of the company had notice of such agreement or had ratified such agreement. Now there is no evidence relating to any of the above facts.

In Paper Mill Supply Co. v. Container Corp. of America, 301 Pa. 62, Mr. Justice Schaffer, in writing the opinion, said where an alleged contract of a cor-

poration is of a special character which would naturally call for the exercise of the judgment of the board of directors of the company, or at least of evidence from them of authority in the agent generally to make it, such contract will not be enforced if there is nothing to show it was made by the directors or that they authorized their agent to make it.

In Long et al. *v.* Lehigh Coal and Navigation Co. of New England, 292 Pa. 164, the syllabus is, in part, as follows:

"A managing director of a corporation is only an ordinary director entrusted with some special powers; such powers may be given him by the articles of association or by delegation from the board of directors."

"A statement of claim must set forth the cause of action with accuracy and precision, and the proofs must correspond."

In the case just cited, the higher court said:

"There being nothing shown which would justify recovery by plaintiffs, the court properly gave binding instructions for defendant."

In Solomons *v.* United States, 137 U. S. 342, the opinion, written by Mr. Justice Brewer, virtually covers the instant case. Where a person is in the employ of another in a certain line of work and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employes to develop and put in practical form such invention, he cannot recover for such service nor prevent his employer from using such invention, and neither could he plead title thereto as against his employer.

In Gill *v.* United States, 160 U. S. 426, Mr. Justice Brown wrote the opinion of the United States Supreme Court, which, in part, reads as follows:

"This case raises the question, which has been several times presented to this court, whether an employe, paid by salary or wages, who devises an improved method of doing his work, using the property or labor of his employer to put his invention into practical form, and assenting to the use of such improvements by his employer, may, by taking out a patent upon such invention, recover a royalty or other compensation for such use. In a series of cases, to which fuller reference will be made hereafter, we have held that this could not be done."

In reviewing the decisions that we already have, and also the decisions cited by his honor Mr. Justice Brown in the above-entitled case, we feel in duty bound to sustain the position taken by the defendant in the instant case and discharge the rule to take off the compulsory nonsuit.

We have carefully examined the brief submitted by plaintiff's attorneys, and that brief is certainly worthy of careful study. It is well prepared and numerous authorities are cited to support the position of the plaintiff. We feel it is not necessary to write an opinion relating to these different decisions. As above stated, we think the decisions we have cited in this opinion are the law in this case and cases of this character. In our opinion, it cannot be successfully contradicted that there was no evidence showing that the directors ever gave authority to make such contract, and, again, there is nothing to show that the contract was made by the directors or they had authorized their agent to make it.

The plaintiff's statement alleges that the defendant company, by R. G. Williamson, its superintendent and treasurer, hired, employed and agreed to pay the said plaintiff, Bert Manross, to build and construct a device that would save to the defendant company the fuller's earth and dust used for filtering oils, etc. There is not even an allegation in the plaintiff's statement that R. G. Williamson had authority to make such agreement, nor is there any allegation

in the plaintiff's statement that the officers or directors of said corporation had knowledge of such agreement or ever ratified such agreement. Without allegation in the plaintiff's statement or proof of the foregoing facts, it virtually leaves this claim void of the essentials necessary to make a contract between this plaintiff and the defendant company.

As we understand the law, where the plaintiff fails to prove the essentials necessary to make a contract, it is the duty of the trial judge to determine its legal effect. Now, in the instant case, this was not an everyday business transaction, but a contract of a special character, and it would naturally call for the exercise of the judgment of the board of directors, or at least of evidence from them of authority in Williamson generally to make such contract, and under the circumstances of this case it was the duty of Manross to ascertain and prove the nature and extent of Williamson's authority. It was necessary for Manross to trace the authority of Williamson to its source in order for him to recover.

Taking in all of the surrounding circumstances of this case, we find it our duty to sustain the first, second, third and fifth reasons for a compulsory nonsuit.

Ergo, the rule dated May 12, 1932, to show cause why compulsory nonsuit should not be taken off is discharged.

From Joseph H. Goldstein, Warren, Pa.