Jacob G. KASSAB

v.

RAGNAR BENSON, INC.

Civ. A. No. 64–178.

United States District Court
W. D. Pennsylvania.

May 27, 1966.

McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., for plaintiff.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

This diversity contract case heard by the Court without a jury represents the other side of the coin from that reported in Ragnar Benson, Inc., v. Kassab, et al., 325 F.2d 591 (3rd Cir., 1963). There it was determined that Ragnar Benson, Inc., was entitled to recover damages from Kassab for his breach of fiduciary duty in appropriating to himself a contract opportunity that his duty required be offered to his employer.

Here, Jacob Kassab, as plaintiff, sues Ragnar Benson, Inc., to recover monies allegedly due him for his services in 1958, the year in which the above-mentioned cause of action arose. Kassab alleges that after several years of employment by Ragnar Benson at a stated salary, in about 1953, he was made a Vice-President of Ragnar Benson, Inc., in charge of the Pittsburgh Office under an oral agreement that he would be paid a monthly salary of $1,000 and a bonus of approximately $100,000 at the end of each year. For the years from 1954 through 1957, his total remuneration from Ragnar Benson, Inc., as shown by his employees W–2 income tax form were as follows: 1954—$109,100; 1955—$109,100; 1956—$75,000, plus a bonus of $25,000 (to recompense Kassab for a donation of $25,000 made to the University of Pittsburgh); 1957—$69,100.

The testimony established that the determination of the amount of the bonus rested entirely in the President of Ragnar Benson, Inc. Up to 1956, the President was Mr. Ragnar Benson, who became Chairman of the Board after 1956 when his son Raymond Benson became President. Their testimony established that in determining the amount of the bonus they would consider what the person had contributed, how hard he had tried, the longevity of service, the company's earnings and the loyalty of the employees. The amount of the bonus was determined on December 31st of each year, was credited to the employee, and was actually paid during the following year.

In the year 1958, plaintiff received his regular monthly salary of approximately $1,000 per month. On November 8, 1958, plaintiff submitted his letter of resignation to Ragnar Benson, Inc, confirming a prior verbal communication to Mr. Raymond Benson, the President of the corporation. This action occurred at about the same time that Kassab was securing for himself or his own corporation the contract which formed the basis of the action of Ragnar Benson against Kassab for breach of fiduciary duty. Kassab received a total renumeration of $12,750 from Ragnar Benson, Inc., for the year 1958, but received no bonus. On January 2, 1959, Kassab's own corporation passed a resolution to pay him

$100,000 for his efforts in securing the contract opportunity for it and in reimbursement of his deprived bonus which he had to forego due to his resignation in the year 1958. Subsequently, in May 1959, Kassab agreed that in the event he should receive his bonus earnings from his former employer Ragnar Benson, Inc., which were denied him during the year 1958, he would repay to his corporation the amount received from Ragnar Benson, Inc., but not to exceed the $100,000 bonus awarded him.

Plaintiff bases his claim in part upon the contention that the bonus for any given year was based upon profits from sales and contracts made in years prior to the year in which the profit was determined, and therefore was compensation due him for his efforts in years prior to 1958, the year of the breach of fiduciary duty. The testimony showed, however, that any bonus was computed on the basis of profits realized in the year the bonus was granted. Plaintiff produced no evidence to show that there was any other basis for computing the bonus, nor any evidence to show what the amount of the bonus should be. Plaintiff also introduced evidence to show that subsequent to the submission of his resignation in November 1958, while efforts were being made to persuade him to reconsider, he was informed by both Mr. Raymond Benson, President of the corporation, and by Mr. Ragnar Benson, Chairman of the Board, that his resignation would have no effect on his bonus. However, it was not shown that these statements, if made, were made before the officers of Ragnar Benson, Inc., became fully aware of Kassab's breach of trust which had occurred during his employment by Ragnar Benson during the year 1958.

■ Our first concern must be to determine the nature of the employment contract between Kassab and Ragnar Benson, Inc. Kassab was under no obligation to remain in the employ of Ragnar Benson, Inc., for any definite period of time. He tendered his res-

ignation early in November of 1958, and despite the efforts of the officers of Ragnar Benson, Inc., to persuade him to remain, it was never asserted that there was any obligation which bound Kassab to remain in the service of Ragnar Benson, Inc. To this extent any obligation to pay a bonus would be unenforceable for the lack of mutuality of obligation.

> "A promise to pay an employee a bonus at the end of the year which does not obligate the employee to do or forego doing something that he was not otherwise obligated to do or forego is a mere gratuity." Judd v. Wasie, 211 F.2d 826, at p. 832 (8th Cir., 1954).

■ Plaintiff faces the obligation of proving his contract in clear and precise terms. There was no agreed rate of bonus established here. While plaintiff testified that it was to be about $100,000 per year, he admitted that the amount was subject to a determination of profit by the company, and that in any event it was subject to the final discretion of Mr. Ragnar Benson, while he was President, and subsequently Mr. Raymond Benson. In fact, only in the years 1954 and 1955, did his total compensation from Ragnar Benson, Inc., exceed $100,000. The total for 1956 was $75,100 and for 1957 $69,100. Mr. Ragnar Benson denied that there was any agreement to pay any employee or to pay any fixed amount, and strongly asserted that the determination to pay a bonus in any year was entirely within his discretion and determined after a consideration of the year's results at the end of the year.

One of the elements required to prove the existence of a binding contract is that the rate of compensation be clearly established.

> "In any employment contract if the rate of pay is uncertain it will not be enforced. Smith v. Crum Lynne Iron and Steel Co., 208 Pa. 462, 57 A. 953; Machen v. Budd Wheel Co., 294 Pa. 69, 143 A. 482." Seiss v. McClintic-Marshall Corp., 324 Pa. 201, at p. 205, 188 A. 109, at p. 110 (1936).

Even if such a contract as contended by plaintiff did exist, plaintiff failed to bring himself within his terms. The plaintiff himself conceded that one of the conditions for receipt of such compensation was that he remain a faithful and loyal employee. It has been established by the prior litigation that Kassab was not a faithful and loyal employee and so failed to heed the terms of the alleged contract. This is an implied obligation of all contracts of employment but was a specific condition of the right to the bonus in this case. A corporate officer acts in a fiduciary capacity and he forfeits all rights to compensation which might otherwise be due him when he breaches his fiduciary duty to the corporation. See Backus v. Finkelstein, 23 F.2d 357 (8th Cir., 1927); Shapiro v. Stahl, 195 F.Supp. 822 (M.D.Pa.1961).

But ultimately plaintiff must fail on his own admissions in the testimony here. Plaintiff and the officers of defendant corporation were in complete agreement on the fact that the ultimate decision as to any bonus was solely for the President of the corporation. It required his agreement to set a bonus at any figure and at the time of Mr. Kassab's departure from the firm no such determination had been made. The evidence showed that such determination was regularly made on the last day of the calendar year after a consideration of the factors of profits made, and the employee's diligence, application, and loyalty. When the time arrived in 1958 for the determination of this bonus, Mr. Kassab was no longer an employee and had been guilty of a disloyal act.

The testimony clearly established that the bonus granted by the defendant company was always determined on the last day of the year. To the extent that plaintiff's evidence tended to establish any right to such compensation, it was not established that any such right was vested in him until the date of determination. A large body of cases throughout the country has established that even where a definite bonus or profit-sharing plan has been established, and forms part of the employment contract, the employee is not entitled to share in the proceeds where he leaves the employment voluntarily. See Annotation 81 A.L.R.2d 1063 "Rights and Liabilities as between Employer and Employee with Respect to General Bonus or Profit Sharing Plan", § 6 "Voluntary termination of employment of employee" (p. 1082 et seq.), and cases collected thereunder.

"In most of the cases in which an employee has left his employment voluntarily prior to the time that a bonus or a share of profits was to be distributed under a general plan, it has been held that the employee could not recover." 81 A.L.R.2d, p. 1069.

In Snyder v. Hershey Chocolate Co., 63 Pa.Super. 528 (1916) where it was found that the contract for hiring was for the year, and an established yearly bonus plan was in effect and was offered to employees as an inducement to remain in the employer's service, the plaintiff was held to be entitled to the bonus for the year since he was prevented from completing the year by a few days because of the failure of the employer to assign him to work, the employer having shown no good reason for terminating his employment prior to the end of the year. The Court said at p. 531:

"as in Kane v. Moore, 167 Pa. 275, [31 A. 631] the bonus being payable at the end of the year, a service extending for that period was intended    *    *".

In the present case plaintiff voluntarily left before the end of the year.

The burden is on the plaintiff to establish the terms of the contract upon which he bases his claim. Beachler v. Mellon-Stuart Co., 354 Pa. 341, 47 A.2d 147 (1946). Zukoski v. Baltimore & Ohio R. R. Co., 315 F.2d 622 (3rd Cir., 1963).

We, therefore, find that plaintiff has failed to carry the burden of proof that he has enforceable claim against the defendant for any further compensation by reason of his past services to it.

The defendant has also raised the defense that plaintiff's claim here is barred

because it should have been asserted as a compulsory counter-claim in the prior case of Ragnar Benson, Inc. v. Kassab et al. Because of the conclusions that we have reached that plaintiff has failed to prove a contract and also because of the conclusion that plaintiff's evidence showed that he failed to fulfill the conditions of any such contract as asserted by him we do not deem it necessary to consider the matter of whether or not the claim in the instant action arose out of the same transaction as was involved in the prior action.

Finally, the defendant has asserted a counter-claim to recoup for itself the money paid to Kassab individually by his corporation in consideration of Kassab's effort in securing the disputed contract for it. In the prior action, Ragnar Benson, Inc. brought suit to recover its damages for profits allegedly lost through the diversion of the corporate opportunity by a former officer and director in breach of his fiduciary duty. The parties in the prior suit were the present defendant as plaintiff and J. G. Kassab, individually, J. G. Kassab, Inc. and Jones and Laughlin Steel Corporation as defendants. The action against Jones and Laughlin Steel Corporation was dismissed, but a verdict was rendered against the other two defendants. The defendant here asserts that the present counter-claim is brought against J. G. Kassab as an individual seeking to recover from him the personal gain which he made by breach of his fiduciary duty. Despite the fact that the employing corporation would have a right to require its employer to account to it for personal gain which he made by breach of his fiduciary duty, we feel that this is a matter which has been litigated and settled by the prior action. This counter-claim and the prior action were based on the same transaction and the same set of facts. Despite the fact that the cause of action in the prior case was brought on the theory of loss of profit, the plaintiff in that action had its verdict and recovery against the present plaintiff, and is barred from asserting the same claim under the same set of facts differently stated to support a different cause of action. Sears-Roebuck and Co. v. Metropolitan Engravers, 245 F.2d 67 (9th Cir., 1956). We will, therefore, find for the plaintiff on defendant's counter-claim.

With respect to the defendant's contention that J. G. Kassab, individually, is not a proper party plaintiff by reason of the fact that J. G. Kassab volunteered to repay J. G. Kassab, Inc., any bonus earnings that he might receive from Ragnar Benson, Inc., for the year 1958 up to a total of $100,000, we do not find that such action constitutes a sufficient assignment of his right to proceed against Ragnar Benson, Inc. It is not an assignment of a chose-in-action resulting in a complete transfer at the time of such assignment of all rights to the assignee. By its terms it did not divest J. G. Kassab of his then right to proceed against Ragnar Benson, Inc., therefore, we find no such assignment as would constitute J. G. Kassab, Inc. as the real party in interest in this action.

The above opinion shall constitute the findings of fact and conclusions of law required of the Court in this matter heard without a jury.

## ORDER

And now this 27th day of May, 1966, it is ordered that judgment be entered for defendant on the claim of plaintiff, and for the plaintiff on the counter-claim of defendant.