## Michael P. MEYER
v.
## W. R. GRACE & COMPANY.
### Civ. A. No. 74–1151.

United States District Court,
E. D. Pennsylvania.

Oct. 29, 1976.

John F. Ledwith, Philadelphia, Pa., for plaintiff.

Sterling H. Schoen, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

BECHTLE, District Judge.

Plaintiff commenced this diversity action against W. R. Grace & Company ("Grace") to recover damages resulting from an alleged breach of an employment contract. Specifically, plaintiff asserted that Grace failed to pay him an incentive bonus, as well as certain raises, educational benefits, severance benefits and equipment commissions, in accordance with his employment contract. The case proceeded to trial and, at the close of the plaintiff's case, the parties settled the claim for equipment commissions and the Court directed a verdict for Grace on the remaining claims, except the claim for an incentive bonus. With respect to that claim, the jury awarded plaintiff damages in the sum of $8,829.34. Presently before the Court is plaintiff's motion for a new trial and Grace's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Viewing the evidence in the light most favorable to plaintiff, the following facts were developed at trial. From approximately September, 1966, to July, 1972, plaintiff was employed as a salesman by the Cryovac Division of Grace. Beginning in the Spring of 1972, plaintiff had a series of meetings with representatives of the Kennesaw Plastics Division of Grace, concerning the possibility of his transferring from Cryovac to Kennesaw. Ultimately, plaintiff decided to transfer and, on May 31, 1972, Theodore Birdsall, Kennesaw's general sales manager, sent plaintiff a letter which set forth in detail the terms under which plaintiff would be employed by Kennesaw. Plaintiff accepted Kennesaw's offer by signing a copy of the letter and returning it to Mr. Birdsall. The agreement, as contained in the letter, provides in relevant part that:

> f. Our incentive program for 1973 has not been determined. I can advise you there will be an attractive incentive program offered for 1973—though no details have been developed as of this date.

The agreement also contained a clause which provided:

> The above constitutes our agreement re finances in total. There are no other agreements express or implied.

Plaintiff worked for Kennesaw from approximately August 1, 1972, until October 15, 1973. To date, plaintiff has not received any incentive bonus from Kennesaw.

In support of its motion for judgment notwithstanding the verdict, Grace contends that this Court erred when it permitted plaintiff to testify as to the negotia-

tions he had with Kennesaw representatives prior to the execution of the written agreement, specifically with reference to an incentive bonus. Grace asserts that plaintiff's testimony concerning those negotiations added to, and varied, the terms of the written agreement and, as such, violated the parol evidence rule. We reject this contention.[1]

The Pennsylvania parol evidence rule,[2] as succinctly stated in *Gianni v. Russell & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924), provides:

> " 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement': *Martin v. Berens,* 67 Pa. 459, 463; *Irvin v. Irvin,* 142 Pa. 271, 287 [21 A. 816]. 'All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, . . . . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence': *Union Storage Co. v. Speck,* 194 Pa. 126, 133 [45 A. 48, 49]; *Vito v. Birkel,* 209 Pa. 206, 208 [58 A. 127]."

*See Manley v. Manley,* 238 Pa.Super. 296, 357 A.2d 641, 644 (1976). Furthermore, if an agreement contains an integration or merger clause, then the parol evidence rule is "particularly applicable." *National Cash Register Co. v. Modern Transfer Co.,* 224 Pa.Super. 138, 144, 302 A.2d 486, 489 (1973). *See Edwin J. Schoettle Co. Appeal,* 390 Pa. 365, 134 A.2d 908 (1957); *Pisiechko v. Diaddorio,* 230 Pa.Super. 295, 326 A.2d 608

(1974). However, if language used in the contract is ambiguous, the parol evidence rule does not bar the admission of oral testimony which clarifies or explains the ambiguous language. *Trapuzzano v. Lorish,* 354 A.2d 534, 536 (Pa.1976); *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146, 150 (3d Cir. 1974). *See* Restatement of Contracts § 238 (1932).

The question presented, therefore, is whether or not the language of the incentive bonus clause is ambiguous. At trial, we held that the language was ambiguous and, accordingly, allowed plaintiff to introduce "parol" evidence to aid the jury in its interpretation of the clause. Upon reexamination of that clause, the Court believes that its ruling was a correct one.[3]

As previously quoted, the incentive bonus clause provides that "[o]ur incentive program for 1973 has not been determined. I can advise you there will be an attractive incentive program offered for 1973— though no details have been developed as of this date." To be sure, the incentive clause states that the details of the incentive program had not been worked out as of the date of contracting. Nevertheless, the language is clear that there would in fact be an incentive program and that, notwithstanding the fact that the exact details had not been determined, plaintiff would participate in the intended program in 1973. However, it was unclear as to exactly what the parties meant by an "attractive incentive program." In order to aid the jury in its interpretation of that ambiguous language, the Court properly permitted plaintiff to give testimony concerning the negotiations he had with Mr. Birdsall prior to the signing of the formal agreement.

---

1. It is clear that, in ruling upon a motion for judgment notwithstanding the verdict, we must, without considering the credibility of the witnesses, view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *See Hunziker v. Scheidemantle,* 543 F.2d 489, 496 n. 12 (3d Cir. 1976); *Thomas v. E. J. Korvette, Inc.,* 476 F.2d 471, 474 (3d Cir. 1973).

2. Since most of the prior negotiations and the making of the contract occurred in Pennsylva-

nia, and since plaintiff resides in Pennsylvania, Pennsylvania law will be applied in this diversity action. *See Gillan v. Gillan,* 236 Pa.Super. 147, 345 A.2d 742 (1975); Restatement (Second) of Conflicts § 188 (1971).

3. Whether language contained in a contract is ambiguous or unambiguous is a question of law to be decided by the Court. *See Haskins v. Point Towing Co.,* 421 U.S. 532, 536 (3d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970).

Grace next contends that, even taking into account plaintiff's "parol" evidence, plaintiff failed to clearly establish the amount of the incentive bonus. We do not agree. Plaintiff testified that Mr. Birdsall told him that Kennesaw would have an attractive incentive program for him which would be equal to or better than that which he had received at Cryovac. [*See* N.T. 1–58, 2–37 to 2–38, 2–44 to 2–45.] Additionally, we permitted plaintiff to introduce into evidence the amount of his incentive bonus earnings for each year he was employed at Cryovac. [*See* plaintiff's exhibit 1.] Accordingly, while it is true that if the rate of pay in an employment contract is uncertain, it will not be enforced, *Seiss v. McClintic-Marshall Corp.*, 324 Pa. 201, 205, 188 A. 109, 110 (1936); *Kassab v. Ragnar Benson, Inc.*, 254 F.Supp. 830, 832 (W.D.Pa.1966), the Court believes that plaintiff submitted sufficient evidence to allow the jury to properly determine the amount of the incentive bonus.

Finally, Grace contends that plaintiff's admission on cross-examination that the exact amount of the incentive bonus was within the discretion of Kennesaw management is fatal to his claim. In support of this contention, Grace relies upon *Kassab v. Ragnar Benson, Inc., supra.* In *Kassab,* plaintiff alleged that the defendant promised to pay him a bonus of approximately $100,000 per year. However, since the plaintiff "admitted that the amount was subject to a determination of profit by the [defendant], and that . . . it was subject to the final discretion" of the defendant's president, 254 F.Supp. at 832, the court concluded that the plaintiff had failed to clearly establish an agreed rate of bonus compensation. While the plaintiff in *Kassab* was unequivocal in his statement that the amount of the bonus was completely within the defendant's discretion, plaintiff in this case testified that the amount of the incentive bonus was only somewhat within management's discretion. Plaintiff testified as follows:

"Q. If a bonus plan had been developed at Kennesaw the amount you actually received would be determined by whoever happened to be in charge of the company at that particular time, wouldn't it, whether it be Mr. Beyer or —?

"A. I don't know.

"Q. The amount you actually received would be somewhat within the discretion of one of the managers above you, wouldn't it?

"A. I would assume that.

"Q. Among the factors that they might consider would be your performance, might it not?

"A. Yes.

"Q. Another of the factors they might consider would be your performance with respect to the other salesmen for Kennesaw based on the information that they had available to them; isn't that true?

"A. Yes.

"Q. And a final factor they might consider was the overall profitability of Kennesaw, whether it was making money or losing money; isn't that true?

"A. That was not necessarily told to me at the time of the agreement a factor, so the answer is no, to my knowledge.

"Q. Well, nothing was specifically told to you at the time of the agreement, was it?

"A. Yes, there was.

"Q. Well, other than what you have already said . . . ?"

[N.T. 2–64 to 2–65.] In light of that testimony and plaintiff's "equal to or better than" testimony, the jury could have reasonably concluded that, although management still had discretion with respect to the exact details of the incentive program, management's discretion was limited with respect to the amount plaintiff was to receive. That is, the amount could not have been less than what plaintiff had previously received at Cryovac. Accordingly, Grace's motion for judgment notwithstanding the verdict will be denied.

In support of its motion for a new trial, Grace sets forth numerous contentions, only one of which merits discussion. Grace contends that, because plaintiff testified on direct examination that he was entitled to

an incentive bonus award from Kennesaw of approximately $8,000 [N.T. 1–58], the jury's verdict was excessive and must be reduced. After a careful examination of the record, we are constrained to agree with Grace's contention, albeit for different reasons, that the jury's verdict was excessive and we will reduce it accordingly.

■ As we mentioned at the outset, the jury awarded plaintiff $8,829.34. An examination of plaintiff's exhibit one shows that plaintiff received an $8,829.34 incentive bonus award from Cryovac for the 1972 calendar year. Thus, the jury obviously concluded that the parties had agreed that the 1973 Kennesaw incentive bonus was to equal that which plaintiff had received the previous year from Cryovac. However, although exhibit one shows a figure of $8,829.34, it was established at trial, by plaintiff's own testimony, that he only received an $8,329.34 incentive bonus in 1972. [N.T. 1–58, 2–50. *See* N.T. 2–86.] Accordingly, since there is no evidence in the record which would support an award in excess of $8,329.34, that sum is the highest amount that the jury could have properly awarded.

■ It is well settled that we may not simply reduce the amount of damages, for to do so would violate the Seventh Amendment's command that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

There is no doubt, however, that this Court has the power to offer plaintiff a remittitur and, if it is refused, to grant Grace's motion for a new trial. *Dimick v. Schiedt,* 293 U.S. 474, 482–485, 55 S.Ct. 296, 79 L.Ed. 603 (1935); *Ehret Co. v. Eaton, Yale & Towne, Inc.,* 523 F.2d 280, 285 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 186 (1976); *Brewer v. Uniroyal, Inc.,* 498 F.2d 973, 976 (6th Cir. 1974). Accordingly, we will deny Grace's motion for a new trial upon the condition that plaintiff file a remittitur in the amount of $500. If plaintiff refuses to accept the reduced amount of damages, the Court will grant Grace's motion for a new trial.[4]

With respect to plaintiff's motion for a new trial, we have considered each of the grounds raised in support of that motion and find them to be without merit. Accordingly, the motion will be denied.

An appropriate Order will be entered.

---

4. One of the grounds which Grace advances in support of its motion for a new trial is that the Court erred when it refused to permit Grace to introduce the deposition testimony of William Kessel, the then vice president and general manager of Kennesaw. We do not believe a discussion of this particular contention is necessary, since our reasons for disallowing the introduction of the Kessel deposition are clearly set forth in the record. [N.T. 2–126 to 2–138.] At this time, we merely wish to supplement the Court's second reason advanced in support of its ruling—namely, that Grace failed to indicate in its pretrial memorandum that the Kessel deposition would be offered into evidence—by reference to our Memorandum Order filed on November 26, 1974. It provides in pertinent part that:

In accordance with the conference held on Thursday, November 21, 1974, in my Chambers, the following Memorandum Order shall govern this case:

\* \* \* \* \* \*

4. On or before Monday, March 10, 1975, counsel for each party shall furnish to counsel for the other party:

\* \* \* \* \* \*

C. A specific identification of each discovery item they expect will be offered into evidence in support of their respective contentions.

\* \* \* \* \* \*

6. Only those . . . discovery items, . . . [which] have been furnished in the manner set forth in this Order shall be considered by the Court for . . . admission into evidence in the case. . . . .