**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

v.

**NATIONAL STEEL CORPORATION, Defendant.**

Civ. A. No. 79–1302.

United States District Court,
W. D. Pennsylvania.

Feb. 24, 1982.

Ronald A. Jacks, Isham Lincoln & Beale, Chicago, Ill., David B. Fawcett, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for plaintiff.

Clyde W. Armstrong, J. Frank McKenna, III, Thorp Reed & Armstrong, Pittsburgh, Pa., for defendant.

## SUPPLEMENTAL OPINION

SIMMONS, District Judge.

### I.

Plaintiff, Continental Casualty Company (hereinafter "CNA"), instituted this action for damages against Defendant, National Steel Corporation (hereinafter "National"), to recover monies allegedly owed by National for insurance premiums from 1974–1978, on a number of policies of insurance. Count I of the Complaint was based on the agreement of insurance, and alternate theories of relief were also advanced: Count II was based on unjust enrichment, Count III on negligent misrepresentation, and Count IV on fraudulent misrepresentation.

The matter came on for jury trial July 13, 1981, and on July 27, 1981, Defendant National moved for a directed verdict at the close of Plaintiff CNA's case in chief. This motion was renewed by National on August 5, 1981, after National presented its own case and CNA presented rebuttal testimony. CNA at this time made a cross motion for a directed verdict in its favor. After oral argument, the Court granted the Defendant's motion for a directed verdict as to all counts of the Complaint, stating its reasons for doing so on the record. *See* Transcript, August 5–6, 1981, at 273–284. The Court then directed the execution of a jury verdict in accordance with its ruling, and judgment was subsequently entered for Defendant National. CNA filed a motion for new trial on August 17, 1981. After submission of briefs, and following the receipt of the final transcripts, the Court heard argument on the motion on January 27, 1982, and thereafter entered an Order affirming its previous ruling, based on the reasons previously set forth in its bench opinion. This Supplemental Opinion clarifies and explains the Court's January 27, 1982 Order, affirming the directed verdict granted in Defendant National's favor and denying Plaintiff CNA's Motion for a New Trial.

### II.

Plaintiff's Motion for a New Trial is based on several grounds. Plaintiff contends that the verdict is contrary to law and contrary to the weight of evidence, and that several errors were made during the course of the trial. It is alleged that the jury should have been given an opportunity to consider the evidence; that Plaintiff's Motion for a Directed Verdict should have been granted; and that erroneous legal standards were used on the cross-motions for the directed verdict. In support of these contentions, CNA claims that the Court improperly considered the credibility of Plaintiff's witnesses; that the Court erroneously considered only Plaintiff's evi-

dence; that the admission of certain evidence was not precluded by the parol evidence rule; and that the Court prejudicially prejudged the presentation of CNA's case and unnecessarily assumed the role of an advocate.

A motion for a new trial under Rule 59, *Fed.R.Civ.P.* is addressed to the discretion of the trial court. *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471 (3d Cir. 1973); *Kerns v. Consolidated Rail Corporation*, 90 F.R.D. 134 (E.D.Pa.1981). It is with this principle in mind that we review the contentions of Plaintiff CNA.

### III.

CNA's claim is based upon the existence of an alleged "guaranteed loss ratio plan." According to CNA, the parties agreed that the plan would be put into effect in 1975. However, the "guaranteed loss ratio plan" was not reduced to writing and was not included in the written agreements of insurance at any time. CNA sought to introduce evidence of this alleged oral agreement, but the Court refused to allow this evidence, holding that the admission of such evidence was barred by the Parol Evidence Rule. The operation and application of the Parol Evidence Rule is thus the dispositive issue in this case.

■ The parol evidence rule precludes the admission of evidence of an oral agreement where a contract is integrated. *See National Cash Register Company v. Modern Transfer Company, Inc.*, 224 Pa.Super. 138, 302 A.2d 486 (1973). "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. . . ." *Gianni v. Russel and Company*, 281 Pa. 320, 323, 126 A. 791 (1924) (citing cases).

■ If the written agreement and alleged oral agreement "relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing," *Gianni, supra* at 324, 126 A. 791, a question which is to be determined by the court. In the instant case, Item 12, of the policies reads as follows:

12. Declarations

By acceptance of this policy the named insured agrees that the statements in the declarations are his agreement and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance. (underlining supplied.)

Plaintiff's Exhibit 7A, Defendant's Exhibit UU.

Item 8, of the policy refers to changes in the policy of insurance:

8. Changes

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company for asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy. (underlining supplied.)

Plaintiff's Exhibit 7A, Defendant's Exhibit UU.

The existence of an integration clause in the written agreement makes the parol evidence rule "particularly applicable." *National Cash Register Co., supra*, 224 Pa.Super. at 144, 302 A.2d 486. *See also Meyer v. W. R. Grace & Co.*, 421 F.Supp. 1331, 1334 (E.D.Pa.1976), *aff'd in part* 565 F.2d 152 (3d Cir. 1977). In Pennsylvania, a contract of insurance is unilateral, and CNA could have and would have inserted the written description of the "guaranteed loss ratio plan" into said written policies of insurance if it were so intended by the parties. *See Panizzi v. State Farm Mutual Automobile Insurance*, 386 F.2d 600, 604 (3d Cir. 1967), *cert. denied*, 392 U.S. 937, 88 S.Ct. 2308, 20 L.Ed.2d 1395 (1968).

■ In this case the "guaranteed loss ratio plan" language was not contained in any writing in the policies of insurance, and it is again important to note that all of the policies of insurance contained an integration clause stating that each policy embodied all agreements existing between the parties. (*See*, e.g., Pl. Ex. 7A; D. Ex. U, KK, LL, UU). In support of the Court's decision at trial that the written insurance contracts were integrated, and therefore that parol evidence was inadmissible, the testimony of Plaintiff's witness, Mr. Dianis, is particularly significant. Dianis stated that no written "guaranteed loss ratio plan" was affixed to the policy, that he recommended it be done, that it would be a reasonable and a prudent business practice to have affixed said "plan" to the policy in writing. Mr. Dianis told Mr. Sobcyzinski to put the language in the written contracts, and he (Mr. Sobcyzinski) intentionally and purposefully refused to insert into the written policy the necessary language about the plan. Tr., July 17, 1981, at 68. Plaintiff's Exhibit 10 indicates that the "guaranteed loss ratio" language was the subject of discussion: "review and discussion for guaranteed loss ratio *endorsement before final draft.*" (Emphasis added). (The credibility of Plaintiff's witnesses, Mr. Dianis and Mr. Sobcyzinski was never in issue.)

The uncontroverted evidence presented at trial, including that of both Plaintiff and Defendant, clearly established that the "guaranteed loss ratio plan" language was the subject of discussion, and related to the same subject matter embodied in the written policies of insurance, was so interrelated that had the parties so intended, said "plan" would have been and should have been included in the writing, and was purposefully and intentionally omitted from the written contracts by the Plaintiff. Plaintiff's own witnesses and exhibits indicate that the written contracts were integrated. The uncontroverted evidence shows clearly that the omission of a written endorsement dealing with the "guaranteed loss ratio plan" was a conscious decision on the part of Plaintiff, and was not due to accident or mistake. The insurance contract was a uni-lateral contract, and CNA easily could have included the "guaranteed loss ratio plan" language into the policies of insurance at any time. The "guaranteed loss ratio plan" language could have been put in writing, and the integration clause of the several policies of insurance required that the "guaranteed loss ratio plan" language should have been in writing if it were intended to be part of the unilateral insurance contracts. The evidence is uncontroverted and even beyond any reasonable doubt that CNA intentionally and purposefully failed to place the required language describing said plan in their unilateral contracts of insurance. Thus, it is obvious that the policies were intended to be complete without the "guaranteed loss ratio plan" language. These circumstances mandated the Court's previous ruling that the parol evidence rule barred the introduction of the alleged oral agreement. As a matter of law, there was nothing for the jury to decide.

### IV.

CNA argues that certain terms of the insurance policy are ambiguous and that extrinsic proof and reference to the guaranteed loss ratio agreements is consistent with the fundamental principles of contract construction. They point to three terms which they contend are ambiguous: "advance premiums", "estimated premium", and "net premium adjustment". For example, because the term "advance premium" does not describe the manner of payment, the method of computing the premium against which the sum is advanced, or how the advance is to be credited toward the final premiums, CNA claims the term is ambiguous, and seeks to have the term interpreted as meaning that an applicable rating program, namely, the "guaranteed loss ratio plan," will be used to make adjustments to the premiums paid throughout the year.

■ In Pennsylvania, words of an insurance policy are to be given their plain and ordinary meaning if they are clear and unambiguous. *St. Paul Fire and Marine In-*

surance v. *United States Fire Insurance Co.*, 655 F.2d 521, 524 (3d Cir. 1981); *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.*, 632 F.2d 1068, 1075 (3d Cir. 1980). Moreover, "A court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them. If the language is unambiguous, interpretation of the contract is a matter of law for the court. In the event that ambiguities do exist in wording adopted by the insurance company, then the provisions must be resolved in favor of the insured." *St. Paul Fire and Marine Insurance, supra* at 524.

■ In the instant case, while it is true that the terms "advance premiums", "estimated premiums" and "net premium adjustment" could theoretically be argued as being ambiguous, Plaintiff CNA did not offer any evidence of any kind that the three phrases above mentioned are ambiguous in the context in which they are used in the policies. For example, Plaintiff's witness, Mr. Dianis explained that "estimated" refers to a change in premium due to an audit or acquisition. Tr., July 20, 1981, at 426–27, 461. To hold the terms of the insurance policy ambiguous in this case would enable Plaintiff CNA to intentionally and purposefully omit an important clause of the unilateral insurance contract, and then unfairly retain the benefit of the alleged omitted clause by claiming ambiguity in the wording of its own contract and thereby circumventing the operation of the written integration clauses in the policies and all in contravention of the parol evidence rule. This our courts will not allow. The written terms of the contracts cannot be made clear by oral testimony which is in direct contradiction to said terms. Nor, as a matter of public policy, will the court allow a party purposefully to create ambiguities in a unilateral written contract, in order to retain the right to adjust, alter and vary the terms of the written insurance policy in the light of changing circumstances to unfairly enhance the financial advantage of the insurance company, and much to the great financial detriment of the named insured and directly contrary to the expressed written intentions of the parties. To allow Plaintiff CNA's contention in this case would be unconscionable and would relieve said Plaintiff of all the risk taking that is inherent in contracts of insurance, contrary to the expressed written agreement of the parties.

In passing, it should be noted that the relevant written unilateral contracts of insurance in this case embody literally hundreds of pages of terms and conditions. There is no evidence of any kind in the record to support the Plaintiff's proposition that the so-called "guaranteed loss ratio plan" was to have been an integral part of the agreed upon insurance plan between the parties, but to the contrary, Plaintiff, who had complete charge of reducing the policies to written form, purposefully and intentionally kept said "plan" out of the written integrated policies of insurance.

### V.

Plaintiff also contends it was error for the Court to grant a directed verdict as to the other Counts of the Complaint. These arguments are without merit.

■ Plaintiff CNA seeks to recover under a theory of unjust enrichment, arguing that it conferred benefits upon National Steel in the good faith belief that the Defendant had agreed to make the supplemental premium payments called for under the alleged "guaranteed loss ratio" policy language. As discussed previously, the evidence clearly establishes that the alleged "guaranteed loss ratio plan" language was not part of the written contract; in order for said "plan" to have been effective, it should have been part of the contract; and although the appropriate officer was told to make said plan part of the unilateral contract, he admittedly intentionally refused to do so. Under these circumstances there can be no unjust enrichment since it was Plaintiff CNA who purposefully chose to omit the "guaranteed loss ratio plan" language from the integrated unilateral contract. As heretofore noted, Plaintiff CNA's own witnesses have so testified without contradic-

tion. *See, e.g.,* Tr., July 17, 1981, at 65–69. (There was no credibility problem of any kind with these Plaintiff's witnesses as to this issue.)

█ Plaintiff CNA also argues that it is entitled to recover under theories of fraudulent and negligent misrepresentation. Plaintiff CNA is again trying to circumvent the operation of the parol evidence rule by presenting evidence of the alleged oral agreement that Plaintiff CNA admittedly, purposefully and intentionally omitted from the unilateral contracts which Plaintiff CNA employees drafted. Plaintiff CNA alleges that National represented that National intended to pay supplemental premiums in accordance with the alleged "guaranteed loss ratio plan", when it knew such representations were false. In light of Mr. Dianis' testimony that the "guaranteed loss ratio plan" language should have been inserted in the written policies, that it was a reasonably prudent business practice to do so, and that his colleague, Mr. Sobcyzinski, intentionally and with clear understanding refused to place said language in the policies, Plaintiff CNA could not have justifiably relied on National's alleged fraudulent representations, even if the same had been made. This Court found no evidence of any kind whatsoever in the record that the Defendant National ever made any such fraudulent representations at any relevant time.

It was therefore right and proper for the Court to have ruled in favor of Defendant on all four Counts when it considered the Defendant's Motions for the Directed Verdict.

## VI.

█ Plaintiff CNA contends that the court improperly weighed and judged the credibility of its witnesses when considering the motion for a directed verdict. It is true that the judge may not usurp the functions of the jury as fact finders and credibility assessors. *See, e.g., United States v. Lena,* 497 F.Supp. 1352, 1357 (W.D.Pa.1980). However, the Court must first determine when it is proper for the jury to determine a matter:

The matter is essentially one to be worked out in particular situations and for particular types of cases. Whatever may be the general formulation, the essential requirement is that mere speculation not be allowed to do duty for probative facts after making due allowance for all *reasonably* possible inferences favoring the party whose case is attacked.

(Emphasis added). *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 115 (3d Cir. 1980), *citing Galloway v. United States,* 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943).

The role of the jury is thus explained in *Sweeney, supra* at 115–16:

The jury's role in our legal tradition probably represents modern America's unique characteristic in the trial of civil cases. It's role cannot be minimized, nor its importance dissipated one iota. Yet the limits of the jury's role must always be recognized. The jury translates as found fact a congeries of relevant evidence on controverted factual issues. The jury does not engage in the final stage of this process until the court makes the critical legal decision that there is sufficient evidence to submit to the jury for the purpose of resolving conflicts in the evidence or inferences permissibly drawn from the evidence, or both.

█ This Court did not impermissibly permit its evaluation of the veracity of Plaintiff's witnesses to influence or dictate its decision to grant the Defendant's Motion for a Directed Verdict. Before ruling on the directed verdict the Court considered the testimony of Plaintiff's witnesses in respect to the failure of the Plaintiff CNA to include the "guaranteed loss ratio plan" in the written policies of insurance. It was clear after reviewing the sum total of the undisputed testimony, and especially that of Plaintiff's witnesses, that there was nothing for the jury to decide. No "reasonably possible" inference could have been drawn from the testimony except that the "guaranteed loss ratio plan" language intentionally was not reduced to writing at the in-

stance of the Plaintiff who drafted said policies and who specifically, and in writing, set forth the integration clauses previously mentioned. The record is clear that the Court did not base its directed verdict on the credibility of the witnesses:

> ... The court is not grounding its decision on any disputed testimony but merely on those facts that were testified to by the plaintiff's witnesses and those documents submitted as being authentic and reliable by both parties, where both parties stipulated that the evidence could come in and the documents were authentic and material, competent in this case.
>
> Now, this court is grounding its decision on undisputed facts, undisputed facts, not facts subject to controversy. So that the court is taking the facts of the plaintiff and adopting them as being true and saying even supposing the truth of all these facts, these facts in and of themselves condemn the plaintiff's four causes of action.

Tr., August 5, 6, 1981, at 276–77 (Bench opinion).

The directed verdict was reached only after considering all the evidence in the case, including Defendant's evidence, and giving every favorable inference to Plaintiff's evidence as well as Defendant's evidence. Plaintiff's evidence completely failed to support its own case, and, in fact, Plaintiff's evidence condemned its own case. At no time did Plaintiff even attempt to impeach its own witnesses, Mr. Dianis, or claim that Mr. Dianis was mistaken in his testimony to the effect that Plaintiff CNA intentionally failed to insert into the written unilateral policies a description of the so-called "guaranteed loss ratio plan". The admissible evidence permitted only one reasonable conclusion, that is, Plaintiff CNA had in fact proved indisputably that it had no case, and as a result, there was nothing for the jury to determine.

## VII.

Lastly, CNA contends that the Court prejudicially prejudged CNA's case and counsel. It is the contention of CNA that the Court made up its mind after hearing only several witnesses in the case.

We agree with CNA that "When the remarks of the judge during the course of a trial, or his manner of handling the trial, clearly indicate a hostility to one of the parties, or an *unwarranted* prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contentions of such party, the judge indicates, whether consciously or not, a personal bias and prejudice which renders invalid any resulting judgment in favor of the party so favored." *Knapp v. Kinsley*, 232 F.2d 458, 466 (6th Cir. 1956) (emphasis added). However, it is only unwarranted prejudgment which constitutes the bias rendering a judgment invalid. An expression of opinion which is formed as the result of Plaintiff's undisputable evidence which is before the Court certainly does not constitute unwarranted prejudgment or personal bias. The Court kept an open mind and it was not until the Court heard the undisputed testimony of Plaintiff's own witnesses that the Court made its decision.

## VIII.

Plaintiff CNA also claims that the Court assumed the role of an advocate and irreparably impaired the orderly and effective presentation of CNA's case. Federal Rule of Evidence 614(b) permits the Court to interrogate witnesses. "It is the right and duty of the judge to act in the interrogation of witnesses to the end that the truth emerge and be reflected in the judgment. Thus, if the issues are obscured or the testimony misunderstood, he is entitled to and should interrogate witnesses to help render understandable such matters." *United States v. Stirone*, 311 F.2d 277, 279 (3d Cir. 1962), *cert. denied* 372 U.S. 935, 83 S.Ct. 881, 9 L.Ed.2d 766 (1963). It is to be noted that the Court questioned witnesses only when necessary to prevent the jurors from being misled. Further, since the Court properly found that there was nothing for the jury to decide, it is not proper to specu-

late as to what the jury might have done if the Court had not questioned witnesses.

■ Plaintiff CNA misapprehends the duty of the judge in the trial of a case. The record is replete with instance after instance wherein misleading and trick questions were put to the various witnesses on cross-examination. It is true that a witness may be lead on cross-exam, but it is not proper for the cross-examiner to mislead the witness in the course of his questioning. The Court has an affirmative duty to make certain that the jurors and the witnesses understand the true nature of the evidence, and further, it is the duty of the Court to make certain that the jury is guided only by the intelligent answers of the witnesses and not by the misleading form of the question. It is the answers to the questions, and not the form of the questions, that the jury must consider.

■ This case dealt with a very technical and highly complex subject matter and contained many concepts and definitions that were strange to the jury, including unique mathematical concepts with which an ordinary juror would not be conversant. The Court made a conscious effort to reduce the complexities of the case by imploring the witnesses to use simple lay language wherever possible.

■ One final point must be made. Plaintiff CNA in its post trial motions repeatedly emphasized the dissatisfaction of several of the jurors with the directed verdict. The Court considers CNA's inclusion of several letters addressed to this Court from jurors in the matter, and a response from this Judge addressed only to those jurors, to be an example of reprehensible and irregular conduct. The Court will not speculate as to how CNA came to possess copies of this private correspondence which is not contained in the official record of this case. We simply note that the misguided subjective opinions of the jurors based in large part on much inadmissible evidence

are not relevant to the merits of Plaintiff CNA's Motion for New Trial.

## CONCLUSION

The Court has carefully reviewed the testimony, its rulings, and the arguments advanced by both parties and concludes that it properly excluded the admission of the alleged oral agreement. As a result, the directed verdict was properly granted as to all Counts, tested by the United States Supreme Court's admonition that, "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by ... directed verdict ...." *Brady v. Southern Railroad*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). The Motion for a New Trial is addressed to the discretion of the trial court, and since we are unable to say that prejudicial error was committed, or that the directed verdict was against the weight of the evidence, or that a mistake has been made, the Motion for a New Trial is denied.

## SUPPLEMENTAL ORDER

AND NOW, to-wit, this 24th day of February, 1982, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Court's denial of Plaintiff's Motion for a New Trial and affirmance of the Directed Verdict in favor of the Defendant as ordered January 27, 1982, is hereby REAFFIRMED.