## Long et al., Appellants, *v.* Lehigh Coal & Navigation Co. of New England.

*Contracts—Coal contract—Mines and mining—Corporations—Principal and agent—Managing director of corporations.*

1. A managing director of a corporation is only an ordinary director entrusted with some special powers; such powers may be given him by the articles of association or by delegation from the board of directors.

2. Authority in an agent to buy one class of goods is not authority to buy another and entirely different class.

3. Authority to buy in the usual course of business is not authority to buy outside of that course of business.

4. When one deals with an agent, he is bound to ascertain the nature and extent of the agent's authority.

5. Such person may not trust to a mere presumption of authority by the agent, but must trace the authority to its source if he would be protected.

6. Where the ordinary business of a corporation is dealing in anthracite coal, and its form of contracts indicate this, persons dealing with the corporation are bound to inquire into the authority of its manager to purchase a large quantity of bituminous coal without special authority from the directors.

7. In such case the burden of proving the manager's power to make the contract, is upon the purchaser, and if the proof of it depends on parol and the facts are undisputed, the extent of .the power is to be determined as a matter of law.

*Pleading—Statement of claim—Evidence—Variance.*

8. A statement of claim must set forth the cause of action with accuracy and precision, and the proofs must correspond.

9. When by the introduction of testimony not relevant under the pleadings, the plaintiff seeks to extend his cause of action, such testimony will not be effective in the absence of amendment.

10. In an action against a corporation for the purchase price of coal, where the statement of claim avers that the coal was bought by a corporation for and as agent of defendant corporation, plaintiffs will not be permitted to show that the two corporations were but one entity, the purchasing company being a mere instrumentality of defendant company.

11. In such case where plaintiff proceeds to trial on the theory of identity of the two corporations, without amending the statement of claim, and a verdict is rendered in favor of defendant, on which judgment is entered, the appellate court will not grant a new trial; and especially is this so where it appears that the statute of limitations has not run, and plaintiffs may bring a new suit.

Argued January 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 299, Jan. T., 1927, by plaintiffs, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1924, No. 1516, on directed verdict for defendant, in case of Lee Long et al., individually and as copartners, trading as the Dixie Splint Co. v. Lehigh Coal & Navigation Co. of New England. Affirmed.

Assumpsit for purchase price of coal. Before BART-LETT, P. J.

The opinion of the Supreme Court states the facts.

Judgment on directed verdict for defendant. Plaintiffs appealed.

*Error assigned,* inter alia, was direction for defendant, quoting record.

*C. Russell Phillips,* with him *W. W. Montgomery, Jr.* and *Roberts & Montgomery,* for appellants.—There was evidence which should have been submitted to the jury

to determine whether Baker as managing director had authority to bind defendant, and it was therefore error to refuse appellants' offer of evidence of the execution of the contracts under Baker's authority: Biggerstaff v. Rowatt's Wharf, Ltd., 2 Chancery (1896) 93; Pickens Co. v. Thomas, 152 Ga. 648; Sun P. & P. Assn. v. Moore, 183 U. S. 642; Singer Mfg. Co. v. Christian, 211 Pa. 534; Am. Car & Foundry Co. v. Water Co., 218 Pa. 542; Williams v. Getty, 31 Pa. 461; Fruit Dispatch Co. v. Magee, 60 Pa. Superior Ct. 259; Faiola v. Calderone, 275 Pa. 303; Fay v. Deady, 82 Pa. Superior Ct. 187; Bayne v. Distributing Co., 87 Pa. Superior Ct. 195.

If Baker had authority to bind his company the execution of a contract negotiated and approved by him was a ministerial act which he could properly delegate to another: Sun Printing & Pub. Co. v. Moore, 183 U. S. 642.

Appellants should have been permitted to offer evidence in support of their offers to prove such a relationship between appellee and the Valley Coal Co. that their separate entities are to be disregarded and the Valley Coal Co. construed as a branch agency of appellee, through which instrumentality defendant received and accepted large benefits under the contract, thereby ratifying and confirming the same: Kendall v. Klapperthal Co., 202 Pa. 596; S. G. V. Co. v. S. G. V. Co., 264 Pa. 265; Danish Pride Milk Products Co. v. Marcus, 272 Pa. 340; Singer Mfg. Co. v. Christian, 211 Pa. 534.

The authority of the agent to sign a memorandum under the statute of frauds in the Sales Act need not be in writing: Rasche v. Campbell, 276 Pa. 268; Hill v. Marcus & Holtzman, 81 Pa. Superior Ct. 314.

*Wm. A. Glasgow, Jr.,* with him *Samuel D. Matlack, Chester N. Farr, Jr.* and *Wm. Jay Turner,* for appellee.—There was no evidence that should have been submitted to the jury to determine whether Baker, as managing director, had authority to bind defendant com-

pany: Am. Car & Foundry Co. v. Water Co., 221 Pa. 529; Standard Construction Co. v. Crabb, 7 Saskatchewan Law Rep. 365; DeForest v. Townsite Co., 241 Pa. 78; Interstate Securities Co. v. Bank, 231 Pa. 422; Schutz v. Jordan, 141 U. S. 213.

Even though the terms of the contract had been orally agreed upon, Baker could not delegate to another the power to draft and execute a written contract, with discretion as to phraseology.

The argument that the separate entities of the appellee and the Valley Coal Co. are to be disregarded and the Valley Coal Co. held to be part of appellee corporation is in absolute variance with the allegations of the statement of claim: Wilkinson Mfg. Co. v. Welde, 196 Pa. 508; Cullen v. Stough, 258 Pa. 196.

Fraud or bad faith or unfair dealing must be shown before the court will adjudge a corporation owning all the stock in and controlling the actions of another responsible for the acts of that other: Ambridge Boro. v. Phila., 283 Pa. 5; Callery's App., 272 Pa. 255; Com. v. Bridge Co., 216 Pa. 108; Point Bridge Co. v. Ry., 230 Pa. 289; Monongahela Bridge Co. v. Traction Co., 196 Pa. 25; Kendall v. Klapperthal, 202 Pa. 596.

Whether the authority of an agent to sign a memorandum under the Sales Act is required to be in writing, is an open question in Pennsylvania, and has never been decided by the Supreme Court.


OPINION BY MR. JUSTICE SCHAFFER, January 30, 1928:

This is an action of assumpsit to recover the purchase price of bituminous coal alleged to have been delivered by plaintiffs to defendant under two contracts and for damages for their breach in failing to take and pay for other coal agreed to be purchased thereunder. The total amount claimed is $416,779.64. The court below directed a verdict for defendant and from the judgment entered thereon comes this appeal.

The first contract was dated July 17, 1922, and was to continue in force until March 3, 1923, and the second September 1, 1922, and to continue in force until March 3, 1924; they were for the output of plaintiffs' mines. The contracts were not made with defendant but with another corporation, Valley Coal Company. In them, plaintiffs, a partnership, are described as "seller" and Valley Coal Company as "buyer." Defendant is nowhere mentioned in the agreements and its only connection therewith, so far as the documents themselves disclose, is that they are signed "Valley Coal Company, By B. M. Ainsworth, Pres'd., Agent for L. C. & N. of N. E." which letters it is agreed mean Lehigh Coal & Navigation Company of New England, the defendant.

It is set up that these contracts were authorized by Harry F. Baker, who was managing director of Lehigh Coal & Navigation Company of New England, having been so designated by its board of directors as a result of the action of its stockholders. It is plaintiff's contention that Baker was empowered by his company to enter into such contracts as the ones sued upon, and that he could direct the Valley Coal Company as agent for defendant to execute them in its behalf. Plaintiffs' case in the statement of claim is based upon the alleged agency of the Valley Company. It becomes important, therefore, to ascertain what Baker's powers were as managing director, because it is through him the Valley Company derived the power, if any it had, to execute the contracts in defendant's behalf. The only written authority shown to have been vested in Baker by defendant was that the board of directors, by resolution, had given him power to sign checks and vouchers. There was no other resolution on the minutes of the company, nor was there any by-law of the company, defining his powers.

Defendant was a Massachusetts corporation, whose charter stated its business as being "to buy and sell coal and fuel and to sell fuel and coal on commission for coal

mining companies and producers." The only business transacted by it up to the time of the execution of the contracts under consideration, was the buying and selling of anthracite purchased from the Lehigh Coal & Navigation Company of Pennsylvania. It had never bought or sold bituminous coal. Baker testified that during all the time in which he had been managing director of defendant he had never entered into any agreement for the purchase of coal covering a long period of delivery or a fixed tonnage, such as the contracts in question, which covered deliveries over a period of twenty months and contemplated the purchase of the entire output of plaintiffs' mines aggregating during the period 381,762 tons. He said the only large contract with which he had been concerned was one for 40,000 tons of anthracite and it was executed by the president of defendant after approval by its board of directors; that he had never entered into a contract for the purchase of any kind of coal for future deliveries. He said that, aside from the signing of checks and vouchers, his only other duties were to see that shipments of coal were made regularly to coal pockets at Portland, Maine, and Worcester, Mass., for sale by defendant company to retail dealers; that he shipped the coal on information as to requirements received from the president of the company, who was located in Boston, and shipped only anthracite. He testified that the contract for 40,000 tons of coal which had been signed by the president and authorized by the board of directors was for the sale of that tonnage to the Valley Coal Company in Milwaukee. The testimony of Baker as to the limits of his power and authority was properly brought out by defendant's counsel when he was called as under cross-examination by plaintiffs for the purpose of establishing the scope of his authority: American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529. Nothing in his testimony showed authority to execute the contracts in question or such relation to the business of the company as

to imply such authority. The fact that he had charge of the large shipments of anthracite that defendant made to New England, which appellants urge as a circumstance from which his general authority to bind defendant can be inferred, loses significance when the course of business in regard to these shipments is considered and contrasted with the situation relating to the contracts in suit. "The party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it. The burden is on the plaintiff. The plaintiffs would not contend that they had made out a cause of action against the defendants, by proving that Hughes [the agent] had made a purchase in their name. Of course, they must go further, and prove that he had authority to purchase; and they must also prove that the purchase was within the authority conferred. Authority to buy one class of goods would not be authority to buy another and entirely different class. Authority to buy in the usual course of business would not be authority to buy outside of that course of business": Schutz v. Jordan, 141 U. S. 213, 218; 35 L. Ed. 705, 709. That the burden of proving Baker's power to act for defendant in the contracts here involved rested on plaintiff and the extent of Baker's power, since proof of it depends on parol and the facts are undisputed, is to be determined as a matter of law: see Humphrey v. Brown, 291 Pa. 53, 59.

H. S. Litton, one of the plaintiffs, testified that he was present when the first one of the contracts in question was signed, that prior to its execution he had met Ainsworth, President of the Valley Coal Company, in Cincinnati, for the purpose of entering into a contract for the sale of coal, that he told Ainsworth the Valley Company did not have sufficient financial strength to warrant him in doing business with it, but that if Ainsworth would furnish some guaranty that the coal would be paid for, a contract would be entered into; that there-

after in company with Ainsworth he saw Baker in Philadelphia, and that the form of the contract was in the hands of the parties present at the conference. In addition to this testimony, appellants' counsel made certain offers of proofs, which, summarized, were as follows: That Baker at the conference at first did not signify his willingness to permit defendant company to enter into the contract, that later there was a suggestion made to have it executed in the way it was actually signed, to which Baker did not assent in Litton's presence; that Litton left Ainsworth in conference with Baker and that subsequently on the same day Ainsworth returned to Litton and told him he was authorized to execute the contract and thereupon executed it in triplicate, one counterpart being retained by Ainsworth, one by Litton and the third being sent to Baker. That the second contract was prepared with Baker's consent and approval and was executed in Cincinnati by his authority in the same manner as the first contract, triplicate copies being prepared. That subsequently the contract was the subject of discussion between Litton, Ainsworth, Baker and Long, another of plaintiffs, in several conferences, that at one of them in defendant's office, Baker produced his counterpart of the second contract and that in this conference it was recognized by him as the obligation of defendant; that thereafter Litton wrote a letter to Baker in which he specifically called Baker's attention to the way in which the contract was executed and that as the result of that letter, a further conference was held in which the subject matter of the contract was discussed and again the contract was recognized by Baker as the contract and obligation of defendant. So far as the first contract was concerned the offer was limited to show that it had been prepared in all its terms except the elements of time and price at the first conference, that at this conference time and price had not been definitely settled, that when Ainsworth came back to Litton later he stated that he was authorized to agree

as to these terms and they were accordingly written into the contract.

These offers were rejected by the court on the ground that they were not sufficient to show authority in the Valley Company to enter into the contracts as defendant's agent. We think this action of the trial judge was proper, particularly so taking into account Baker's testimony. Appellants argue that there was testimony which should have been submitted to the jury to determine whether Baker had authority to bind defendant, and that it was error to refuse their offers of evidence of the execution of the contracts under Baker's authority,—that the title "managing director" implies very broad powers. In England where the title is more frequently used than here this may be so (Biggerstaff v. Rowatts Wharf, Ltd., 2 Chancery (1896) 93) but in this country "A managing director is only an ordinary director intrusted with some special powers. These special powers may be given him by the articles of association or by delegation from the board of directors": 14A C. J., section 1862, p. 95. "A general or managing officer or agent......has authority to do any act on its [the corporation's] behalf which is usual and necessary in the *ordinary course* of the company's business......The fact that he occupies the position of general or managing agent implies, without further proof, his authority to do anything that the corporation itself may do so long as the act done *pertains to the ordinary business of the corporation": 14A C. J., section 2221, pp. 359-360. The ordinary business of defendant was the sale of anthracite. The way in which the contracts were drawn with defendant not named in them, and the manner in which they were executed, were sufficient to put plaintiffs upon inquiry as to just what Baker's authority was. They were dealing for a large quantity of coal, the price of which ran into figures of magnitude. They could not assume, without ascertaining what the ordinary business of defendant was, that Baker had authority to act in

such a transaction as they were inviting. In the words of the opinion in DeForrest v. Northwest Townsite Co., 241 Pa. 78, 82, "this was not an every-day business transaction, but a contract of a special character that would naturally call for the exercise of the judgment of the board of directors" or at least of evidence from them of authority in Baker generally to make such a bargain. "When one deals with an agent he is bound to ascertain the nature and extent of the agent's authority. He may not trust to a mere presumption of authority, or to any mere assumption of authority by the agent; but must trace the authority to its source if he would be protected": Interstate Securities Co. v. Third Nat. Bank, 231 Pa. 422, 429. We are of opinion that the offers of proofs as tendered were insufficient when account is taken of Baker's testimony to show authority in him to bind defendant to the contracts or to constitute the Valley Company its agent. There was no offer to show that the board of directors of defendant or any of its officers knew anything about the contracts.

It was also offered to prove that the relationship of the Lehigh Coal & Navigation Company of New England to the Valley Coal Company was such that the separate corporate entity of the two corporations should be disregarded and the actions of the Valley Company taken under the direction of the officers of defendant should be treated as the actions of defendant itself. The facts authorizing this conclusion which were offered to be shown were that prior to the contracts in suit defendant had been selling anthracite at Milwaukee through the agency of the Valley Company, that while, for convenience in accounting, the transactions between it and the Valley Company were treated as sales to the latter and resales by it, this was not the true relationship, but that the Valley Company was in fact selling defendant's coal; that defendant had acquired all of the stock of the Valley Company and had held itself out to others as the owner of the stock; that defendant, through Baker,

its managing director, sent Ainsworth to Milwaukee in the fall of 1921, prior to the execution of the contracts, to look after its interests and made him an officer and director of the Valley Company, and through him, with funds furnished by defendant, it had purchased all the stock of the Valley Company; that defendant through Baker named the board of directors of Valley Company and through its officers directed the actual details of its operations; that defendant supplied funds to finance the Valley Company and rented the dock on which the coal was loaded and handled and paid the rent therefor; that the Valley Company did not operate as an independent corporate entity through its officers and board of directors, that, while its stockholders and directors held their regular meetings for the purpose of maintaining a corporate organization, they did not in any case direct the conduct of the company's business, which was directed even in minutest details by Baker and the staff of defendant and that Ainsworth as president of the Valley Company acted not under the instructions of his board, but under those of Baker, and looked to him as his superior officer and referred others to him as such with Baker's knowledge and acquiescence; that defendant company through its staff directed in detail the method of accounting and bookkeeping by the Valley Company; that it specified the sending of daily reports of business done on forms prepared and supplied by it; that defendant named the price at which for bookkeeping purposes coal was charged to the Valley Company, named the prices at which coal should be sold to customers of the Valley Company and dictated to whom and on what terms credit should be given by it; that defendant opened a bank account in Milwaukee in which the proceeds of sales of anthracite were deposited, in which accounts the Valley Company's officers had authority only to deposit but upon which they had no authority to draw; that the title to the anthracite shipped to Milwaukee remained in defendant until it was sold

from time to time by the Valley Company, whereupon defendant charged to the Valley Company the amount of coal sold at prices named by defendant and the Valley Company reported in detail its resale; that by the time the anthracite sold in Milwaukee had been all sold and shipped by the Valley Company, no further coal was obtainable owing to a strike of the anthracite miners, and that defendant company, at Ainsworth's suggestion, in order to avoid going out of business in Milwaukee, and for the purpose of recouping losses in the anthracite transactions, decided to trade in bituminous coal, and in pursuance of this decision entered into the contracts sued upon and that thereafter there was no change in relationship between the Valley Company and plaintiffs but the methods of operations were continued as before; that defendant received the benefits of the contracts in question, that the result of the sale of the anthracite by the Valley Company was a loss of approximately $65,000 as shown by its books, and that the proceeds of the sales by the Valley Company of the coal delivered by plaintiffs under the contracts in suit were applied to the payment of operating expenses of the Valley Company and to actual payments to defendant until the anthracite losses charged against the Valley Company were paid in full; that Baker knew all the facts contained in the offers.

These offers were objected to on defendant's behalf and rejected on the ground that plaintiffs had declared on a statement of claim in which it was set up that the Valley Company was the agent of defendant corporation and authorized as such by defendant, through Baker, to execute the contracts and in which no allegation was made as to the entities of the two corporations being the same. Plaintiffs contend that the testimony preferred under this offer was admissible under the thirtieth paragraph of their statement of claim, which reads: "30. The contracts referred to in this statement of claim were made by the defendant's duly authorized

agents on its behalf as herein set forth, and the defendant, by its duly authorized agent, the said Harry F. Baker, its general manager, has repeatedly ratified and acknowledged said contracts on behalf of the defendant corporation and said defendant has knowingly accepted and received benefits arising from said contract by receiving the proceeds of coal delivered by plaintiff under this contract." It will be seen that this averment is of the execution of the contracts and their ratification and acknowledgment by Baker, coupled with the averment that the defendant had accepted and received benefits arising from them by receiving the proceeds of coal delivered by plaintiffs. This is very far from an allegation that the two corporations were but one entity, the Valley Company being a mere instrumentality of defendant. Nowhere in the statement of claim is there such an allegation. "The plaintiff must, in his statement, set forth his cause of action with accuracy and precision. And the proofs must correspond. And, further, when, by the introduction of testimony not relevant under the pleadings, the plaintiff seeks to extend his cause of action, such testimony will not be effective in the absence of an amendment": Cullen v. Stough, 258 Pa. 196, 199.

We also think, as the record stands, it could not be determined that appellee had ratified the contracts by accepting their benefits. All that the offer purported to show was that from the proceeds of the sale of the coal purchased from plaintiffs defendant had received from Valley Company $65,000 in payment of an indebtedness due by Valley Company to it. Without more being shown, this would not amount to a ratification of the contracts.

As we have determined that Baker had no authority to execute the contracts or to delegate their execution, the question whether the signing of them by Valley Company was merely a ministerial act drops out of the case, as does also the question raised at the argument as

to the necessity for the agent's authority to be in writing.

As was pointed out by the court below, the plaintiffs proceeded on the theory that the Valley Company was an independent organization which became the agent for defendant in making the contracts. There was no allegation of deliveries to the Valley Company or of deliveries to defendant by virtue of the identity of the two. The only relationship alleged between them was that of principal and agent. In its opinion the court below says: "Inasmuch as the plaintiffs went to trial and argued the motion for a new trial without asking leave to amend, we think it would be unfair to the defendant at this time to grant a new trial for no other reason than to permit plaintiffs to amend. The statute of limitations has not run and the plaintiffs may bring a new suit." As the pleadings stood when the offers were made and throughout the trial, the testimony to be produced would have been incompetent and the court rightly rejected the offers.

There being nothing shown which would justify recovery by plaintiffs the court properly gave binding instructions for defendant.

The judgment is affirmed.