Beachler *v.* Mellon-Stuart Company, Appellant.

Argued March 26, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

342

*Charles F. Uhl,* with him *George Mashank,* for appellant.

*James A. Stranahan, Jr.,* with him *Robert M. Gilkey* and *Stranahan & Sampson,* for appellee.

OPINION BY MR. JUSTICE DREW, May 27, 1946:

John S. Beachler, plaintiff, brought this suit in assumpsit against Mellon-Stuart Company, defendant, to recover the sum of $3000, claimed to be due by reason of the breach of an alleged oral contract entered into between him and defendant's agent, Richards, for reservation of sleeping quarters in plaintiff's dormitory. Defendant, while admitting that Richards was its personnel manager, denied the making of the alleged contract with plaintiff, and further denied that Richards had any authority to make the contract plaintiff alleges. A jury found for plaintiff, the learned court below refused defendant's motions for judgment *non obstante veredicto* and a new trial and entered judgment on the verdict, whereupon defendant appealed claiming as error the refusal of its motions.

In considering the motion for judgment all disputed facts will be resolved in favor of plaintiff: *Sorrentino v. Graziano,* 341 Pa. 113, 17 A. 2d 373. During 1942 and 1943 defendant company was engaged in the construction of an army camp in Mercer County, and at that time plaintiff was operating a dormitory for working men in nearby Greenville. Sometime after the first of

November, 1942, plaintiff received a call from Ivor L. Richards, personnel manager of defendant, and as a result conferred with him at the camp. Plaintiff described that meeting and the conversation which took place, as follows: "When I first went in to see Mr. Richards he said, 'You are just the person I am looking for and I have men coming here, I don't know where to put them up.' He asked how many men I could take care of. The first floor was pretty well filled so I went into detail and told him by extending the heating system upstairs I could take care of a great many men but I had been turned down on the priority for pipe so he said in his conversation, he said, 'Well, how many could you take care of?' I said, 'Fifty', and he said, 'I would like to reserve that upstairs for myself.' And with that in mind I said that I thought I could arrange to get the beds and necessary facilities to take care of the fifty people which I did." Plaintiff contends this conversation constituted a binding contract with defendant company, and that Richards was its agent, and he brought this suit to recover damages for its breach.

The first question is, did the parties intend at that meeting, to enter into a binding and enforceable contract. We are convinced there was no such intention. In *Friese's Estate,* 336 Pa. 241, 245, 9 A. 2d 401, we said, in this connection: "It is an elementary essential of a contract that the nature and extent of its obligation be certain." Each of its terms must be shown with certainty and conciseness: *Stevens v. Doylestown B. and L. Assn.,* 321 Pa. 173, 183 A. 922; *Edgcomb v. Clough,* 275 Pa. 90, 118 A. 610. "The parties themselves must agree upon the material and necessary details of the bargain": *Beaver v. Slane,* 271 Pa. 317, 322, 114 A. 509.

A careful examination of the conversation which plaintiff had with Richards shows beyond question that there was no meeting of the minds of the parties as to the terms of any contract. The terms discussed were most inadequate and indefinite and could not in any

sense constitute a completed contract. There was nothing said as to when the reservation was to commence or for what period it was to continue; not a word was said as to the price to be paid, or as to the terms of payment. At best, the conversation of plaintiff and Richards indicates nothing more than a preliminary inquiry regarding a possible reservation contract to be made later. The terms of the alleged contract are ambiguous, incomplete, and much too indefinite, to form a valid enforceable contract.

That this conversation at the time it was had, and for at least four months thereafter, was never considered a contract by plaintiff is clearly demonstrated by his own conduct. It was not until late in March, 1943, and after an invoice had been received by him from defendant for pipe and materials which Richards, at plaintiff's request, had secured for him to complete the heating system in his dormitory, that plaintiff for the first time called upon Richards and requested payment for the alleged reservation of fifty beds in his dormitory. Richards at once denied there was any reservation or liability. During this four-month period, only once did plaintiff contact Richards, which was when he claims he called Richards' secretary, on December 12, 1942, and said the beds were ready. From that day to March 27, 1943, which was after he received defendant's invoice, plaintiff never inquired of Richards or of any of defendant's officers as to why the fifty beds were not being used; nor did he advise them that the beds were being held for defendant; nor did he demand payment, or indicate in any way that he would demand to be paid by defendant. No weekly-, semimonthly or monthly bills were rendered by plaintiff to defendant. Defendant received but one bill for the amount of $3000 sometime after March 27, 1943, covering the entire period from December 12, 1942, to March 27, 1943.

The burden was on plaintiff to establish the contract upon which he based his claim and this he failed to do.

Even if it were possible to construe the conversation upon which plaintiff seeks to recover to be a binding contract, we cannot agree with his contention that Richards had authority to enter into the type of agreement here under consideration. "The party who seeks to charge a principal for the contracts of his agent must prove that agent's authority": *Long v. Lehigh C. & N. Co. of N.E.*, 292 Pa. 164, 170, 140 A. 871. Plaintiff offered no evidence as to any express authority of Richards and did not claim that he had such authority. Neither was it argued that he had implied authority, or that the doctrine of agency by estoppel should be invoked. The position taken by plaintiff is that the words and acts of Richards constituted apparent authority and because of reliance thereon, defendant company, as principal, is liable for the breach of contract. The evidence presented was insufficient to show a holding out by defendant of Richards as possessing any authority to enter into this alleged agreement: *Stirling's Petition*, 292 Pa. 194, 140 A. 869. His conversation with plaintiff relative to reservations, the taking of men to plaintiff's dormitory on one occasion, and in using his influence to assist plaintiff to get pipe and materials for his heating system were nothing more than voluntary acts of assistance given plaintiff, which acts were beyond any authority Richards had to bind defendant. We find nothing in this case to indicate that the corporate officials of defendant had any knowledge of such acts of Richards, and by acknowledging them had failed to disavow them: *Loomis v. Luz. Silk Throwing Co.*, 96 Pa. Superior Ct. 69.

A thorough examination of all the testimony leads us to the conclusion that plaintiff and Richards did not enter into a binding contract, and that Richards had no authority to execute any contract for reservation of sleeping quarters for defendant's employees. The point for binding instructions, therefore, should have been affirmed.

Judgment reversed and here entered for defendant.