**A. Henry "Hank" SOAR et al.,**
**Plaintiffs, Appellants,**

**v.**

**NATIONAL FOOTBALL LEAGUE**
**PLAYERS' ASSOCIATION et al.,**
**Defendants, Appellees.**

**No. 76–1085.**

United States Court of Appeals,
First Circuit.

March 11, 1977.

■■■■■■■■■■■■■■■■■■■

Leonard Decof, Providence, R.I., with whom Philip M. Weinstein and Leonard Decof, Ltd., Providence, R.I., was on brief, for appellants.

Robert V. Atmore, Minneapolis, Minn., with whom Thomas D. Gidley, Hinckley, Allen, Salisbury & Parsons, Providence, R.I., Edward M. Glennon and Lindquist & Vennum, Minneapolis, Minn., were on brief, for National Football League Players Association, appellees.

John B. Jones, Jr., Washington, D.C., with whom C. Michael Buxton, Washington, D.C., Edwards & Angell and John H. Blish, Providence, R.I., were on brief, for National Football League, Pete Rozelle and James Kensil, appellees.

Before COFFIN, Chief Judge, and ALDRICH and McENTEE, Circuit Judges.

McENTEE, Senior Circuit Judge.

Appellants are several former professional football players who played in the National Football League ("NFL") and retired before the 1959 season. They brought an action against the NFL and two of its officers and against the National Football League Players' Association ("NFLPA") and two of its officers, seeking to recover funds allegedly due in consequence of a trust fund agreement referred to as the "Bert Bell NFL Player Retirement Plan."

Appellants alleged, in part, that an oral contract came into existence on April 23, 1959 between the NFLPA (on behalf of the plaintiffs and others) and the NFL (through Commissioner Bert Bell acting as the League's agent). According to the plaintiffs, this contract provided that NFL players who retired prior to the 1959 season would be included in a players' pension plan, would be given pension credits for their years of NFL play before 1959, and would (if sufficient funds became available) be accorded benefits from the pension funds.[1]

We need not reproduce here all the facts adduced by appellants as probative of the existence of the oral contract from which their asserted rights to pension benefits allegedly derive. It would require several paragraphs to describe the full factual context in which that contract is said to have been made. For present purposes, however, it suffices to quote the following exchange between William Howton (President of the NFLPA in 1959) and Commissioner Bert Bell:

> "*Howton*: 'Look, we kind of got coerced into accepting this thing. This was Carroll's suggestion. None of us are included in this plan and it's not the plan we want.'
>
> *Bell*: 'Look, we had to take this plan going on. There was a pretty good fight going on. There was some tempers flaring in the owners' group. They kind of pushed it in.'
>
> *Howton*: 'Bert, we want the retroactive part of it.'
>
> *Bell*: 'Look, I assure you, the money will go to retroactive benefits.' "[2]

This brief conversation constitutes the nucleus of appellants' theory that a binding oral contract (to which they were parties) was made on April 23, 1959. The conversation allegedly took place in a Philadelphia hotel on that date after the NFL owners had approved a pension plan which would

---

1. Appellants also alleged the breach of fiduciary duties owed to them by some or all of the appellees. As we view the case, however, the issue of fiduciary duties need be reached only if there exists a valid contract between the parties. *See* discussion, *infra*.

2. The "Carroll" referred to is Carroll Rosenbloom, one of the owners. The coercion which Howton mentioned consisted of Rosenbloom's strong advice to Howton and the other NFLPA representatives that they accept the pension plan approved by the owners on that day without further discussion. Rosenbloom's exact words (as recalled by Howton) were: "Look, you got the plan, now is not the time to question it. Go in and thank them [the owners]. Tell them you have got faith in the Commissioner and sit down and go over this whole thing with Hyman [an actuarial consultant] later."

embrace certain NFL players, but not the present appellants.[3]

As did the court below, we shall turn first to the alleged contract between appellants and the NFL. The court declined to hold on motion for summary judgment that no *agreement* existed between Commissioner Bell and the NFLPA, stating that the existence of such an agreement was "an issue of fact appropriate for determination by trial." *See* Fed.R.Civ.P. 56(c). It immediately proceeded to hold, however, that *even if* such an agreement did exist it did not constitute an enforceable contract. The court's summary judgment[4] as to this issue had three independent bases: 1) "no reason-

able person could find on the basis of the evidence . . . that Commissioner Bell had either actual or apparent authority to bind the 'NFL' to a pension agreement;" 2) "there was no legal consideration given for the alleged promise by Commissioner Bell to provide plaintiffs pension coverage;" 3) the alleged contract is too indefinite to be enforced. Because we find the last-mentioned reason to be a fully satisfactory basis for the summary judgment on the contractual issue, we do not pass on either of the other grounds.

It is fundamental[5] that for a contract to be enforceable it must be of sufficient explicitness so that a court can per-

---

3. Briefly, the plan approved on April 23 (entitled the "Bert Bell Retirement Plan") provided for pension eligibility for those players who were active in the 1959 season and played in the NFL for five seasons thereafter (including the 1959 season). The pension trust agreement was not actually executed until 1962; it was approved by the Internal Revenue Service as a qualified pension plan under 26 U.S.C. § 401 in March of 1963. The plan was amended in October 1964 so as to permit those players active in 1959 to use pre-1959 seasons of NFL service to satisfy the five-year vesting requirement. None of the current appellants was benefited by this amendment, nor have there been any subsequent amendments in their favor.

4. Appellants contend that the instant case was not an appropriate one for summary judgment. We disagree. Summary judgment is in order "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is genuine issue as to any material fact . . ." Fed.R.Civ.P. 56(c). *See Rodriguez v. Ritchey*, 539 F.2d 394, 401 (5th Cir. 1976); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Caplan v. Roberts*, 506 F.2d 1039, 1042 (9th Cir. 1974). In determining whether to grant summary judgment, the court must consider the facts in the light most favorable to the party opposing the motion, *Rodriguez v. Ritchey, supra* at 395, and "must indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent, supra* at 464. The opposing party, however, may not rest upon the allegations made in the pleadings, but has the obligation to "set forth specific facts showing that there is a genuine issue for trial." *First National Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). *See* Fed.R.Civ.P. 56(e). *See also Hahn v. Sargent, supra* at 464;

*Robin Construction Co. v. United States*, 345 F.2d 610 (3d Cir. 1965). A court is not obliged to deny an otherwise persuasive motion for summary judgment "on the basis of a vague supposition that something might turn up at the trial." *Lundeen v. Cordner*, 354 F.2d 401, 408 (8th Cir. 1966) (citing cases). The district court's opinion in this case reflects an awareness of these principles, and as to those matters on which it granted summary judgment we think that it correctly found that there remained "no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

We would also note that there is no rule prohibiting summary judgment in contract actions. The general principles governing dispositions under Rule 56 apply with equal vigor to contract actions. *Compare Caplan v. Roberts, supra, with Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014 (8th Cir. 1973). *See generally* 6 J. Moore, Federal Practice ¶ 56.17[11] (2d ed. 1976).

5. As for the question of what law to apply in this diversity case, we must look to the conflict of laws principles of Rhode Island, the forum state, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Turcotte v. Ford Motor Co.*, 494 F.2d 173, 176 (1st Cir. 1974). It is reasonably certain that Rhode Island would judge the validity and enforceability of the alleged contract at issue here on the basis of the law of Pennsylvania, the state where the contract was allegedly made. *Owens v. Hagenbeck-Wallace Shows Co.*, 58 R.I. 162, 171, 192 A. 158, 163 (1937). (The Supreme Court of Rhode Island has specifically refrained, in the relatively recent past, from deciding whether the "interest weighing"

ceive what are the respective obligations of the parties. *Fahringer v. Estate of Strine,* 420 Pa. 48, 58, 216 A.2d 82, 88 (1966); *Lombardo v. Gasparini Excavating Co.,* 385 Pa. 388, 392, 123 A.2d 663, 666 (1956); *Beachler v. Mellon-Stuart Co.,* 354 Pa. 341, 343, 47 A.2d 147, 149 (1946). *See also Willowood Condominium Association, Inc. v. HNC Realty Co.,* 531 F.2d 1249, 1251 (5th Cir. 1976); *Interocean Shipping Co. v. National Shipping and Trading Corp.,* 462 F.2d 673, 676 (2d Cir. 1972); *Heldenbrand v. Stevenson,* 249 F.2d 424, 427–28 (10th Cir. 1957); *Air Technology Corp. v. General Electric Co.,* 347 Mass. 613, 626, 199 N.E.2d 538, 548 (1964); *Ansorge v. Kane,* 244 N.Y. 395, 155 N.E. 683 (1927) (Pound, J.).[6] Applying this principle to the present case, we are convinced that the district court properly found that the alleged oral contract was too indefinite to be enforced even if it fulfilled the other conditions of a valid contract (e. g. consideration) and even if Commissioner Bell was in fact capable of binding the NFL (the issue of apparent authority). The court listed the following as examples of questions left unanswered and unanswerable by the terms of the purported contract:

—"Would the pension plan cover players in the old American Football Conference, some of whose players and teams joined the NFL?"

—"Would there be special treatment for players whose careers were disrupted by World War II?"

—"Would coverage be extended to players on now defunct teams, and if so, would this disqualify the plan for IRS purposes?"

—"What does it mean to say the players will be included when 'sufficient' funds are available?"

▮ The purported oral contract provides no answer to these questions.[7] It is clear that any agreement which leaves unanswered such critical questions cannot by any reasonable stretch of the imagination be said to represent a real meeting of the minds.[8] While an enforceable contract might be found in some circumstances if one or more such questions were left unanswered, *see* note 6 *supra,* the accumulation in the instant case of so many unanswered questions is convincing evidence that there never was a consensus ad idem between the parties. We are fully persuaded that there was no genuine issue of material fact left to resolve concerning the existence of a contract, Fed.R.Civ.P. 56(c), and the court cor-

---

approach which it follows in tort cases, *Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, *cert. denied,* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968), should be applied to contract cases. *A. C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 287 n.5, 292 A.2d 865, 871 n.5 (1972).)

**6.** We recognize, of course, that courts frequently find enforceable contracts in agreements which do not set forth all terms with optimal specificity. *See, e. g. Portnoy v. Brown,* 430 Pa. 401, 404, 243 A.2d 444, 447 (1968); *Suchan v. Swope,* 357 Pa. 16, 19, 53 A.2d 116, 118 (1947). *See also V'Soske v. Barwick,* 404 F.2d 495, 500 (2d Cir. 1968), *cert. denied,* 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); *Purvis v. United States ex rel. Associated Sand & Gravel Co., Inc.,* 344 F.2d 867, 869–70 (9th Cir. 1965); *Air Technology Corp. v. General Electric Co.,* 347 Mass. 613, 626 n.17, 199 N.E.2d 538, 548 n.17 (1964); *Shayeb v. Holland,* 321 Mass. 429, 73 N.E.2d 731 (1947). *Cf.* Uniform Commercial Code § 2–204(3) (Official Text 1972). *See generally* 1. A. Corbin, Contracts §§ 95–108 (1963). The alleged oral contract at

issue here, however, is altogether too indefinite concerning too many important particulars for it to be enforceable. "[T]he void is too great, the omissions are too noticeable and the risk of ensnaring a party in a set of contractual obligations . . . never knowingly assumed is too serious." *Ginsberg Machine Co. v. J. & H. Label Processing Corp.,* 341 F.2d 825, 828 (2d Cir. 1965) (distinguishing *Wood v. Lucy, Lady Duff-Gordon,* 222 N.Y. 88, 118 N.E. 214 (1917)).

**7.** Another important question left unanswered by the purported oral contract is the amount of pension benefits which would be accorded to appellants.

**8.** We are also unable to perceive any valid manner in which the purported oral contract could be said to constitute an enforceable "agreement to agree." *See Bryant v. Clark,* 163 Tex. 596, 358 S.W.2d 614 (1962); *Willmott v. Giarraputo,* 5 N.Y.2d 250, 184 N.Y.S.2d 97, 157 N.E.2d 282 (1959). *See generally* 1 S. Williston, Contracts 45 (3d ed. 1957).

rectly granted the motion for summary judgment.

The contractual claim was Count II; Counts I, III, and IV of the complaint all dealt with various breaches of fiduciary duties owed by the present NFLPA towards appellants. Although in places the complaint does not state with maximum clarity that these alleged fiduciary duties derived from the oral contract discussed above, appellants did so state in their "Memorandum in Objection to Defendant's [sic] Motion for Summary Judgment or to Dismiss This Action as a Class Action."[9] This Memorandum indicates very clearly the relatively narrow base on which appellants' claim of breach of fiduciary duties was founded:

> ". . . Plaintiffs are not asking these Defendants to bargain for them, but rather that they be compelled *to carry out the agreement that was bargained for* on April 23, 1959, at which time the pension plan was agreed to in principal [sic], and thereafter adopted in 1962."

> .    .    .    .    .

> ". . . Plaintiffs argue that the Defendants on their portion of trust and confidence owed a duty to them to refrain from placing their personal interests ahead of Plaintiffs in administering the trust *in accord with the original agreement* to create the pension fund . . . ." (Emphasis supplied).

While we have considerable doubt as to whether any basis for a fiduciary duty could be found apart from the alleged contract of April 23, 1959, we do not pass on that issue since appellants clearly chose to focus exclusively on the contract as the basis for fiduciary obligations.[10] Accordingly, since we have sustained the district court's summary judgment as to the non-existence of an enforceable contract, logic compels us to sustain its summary judgment on Counts I, III, and IV.

*Affirmed.*

---

9. As a result of various propositions in appellants' brief to this court, appellee NFLPA moved to file a supplemental appendix consisting solely of appellants' district court "Memorandum in Objection to Defendant's [sic] Motion for Summary Judgment or to Dismiss This Action as a Class Action." We deferred action on this motion, but we now allow it.

10. *Cf. Mt. Healthy City School District Board of Education v. Doyle,* —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).