**In re TIP TOP FURNITURE CO., INC. t/a Touch of Class, Debtor.**

**KROEHLER MANUFACTURING CO., Plaintiff,**

v.

**Harry B. ALTENBERG, Interim Trustee of the Bankruptcy Estate of Tip Top Furniture Co., Inc. and Tip Top Furniture Co., Inc., Defendants.**

**Bankruptcy No. 80–00291K.**
**Adv. No. 80–0763K.**

United States Bankruptcy Court,
D. Pennsylvania.

July 8, 1981.

Gerald McOscar, West Chester, Pa., for plaintiff.

Harry Altenberg, Philadelphia, Pa., Trustee.

Carroll G. Wille, West Chester, Pa., for debtor.

Vito F. Canuso, Jr., Philadelphia, Pa., for Trustee.

Thomas R. Hecker, Bristol, Pa., for defendant.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

The issue before the court is whether the security interest asserted by the plaintiff, Kroehler Manufacturing Co. (Kroehler), is valid and enforceable against the proceeds of the trustee's sale of debtor's inventory. The court concludes that the alleged security interest is not valid.[1]

---

1. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 752.

The defendant in this case is Tip Top Furniture Co., Inc. (Tip Top) which is the debtor in a Chapter 7 proceeding commenced in February of 1980. Tip Top is a corporation formed approximately six (6) years ago to operate a furniture store in Levittown, Pennsylvania. Marjorie Barsky has served as president of the corporation from the day of its inception.

In October of 1976, Marjorie Barsky became ill and was unable to attend to the business of the corporation. Mitchell Barsky, Marjorie's husband, from whom she had been separated for five (5) years, was contacted by Mrs. Barsky's children to stay at the house while she was ill. When she recovered, Mitchell Barsky volunteered his services to Tip Top, which Marjorie operated as president, and continued to reside at her house. He served as a salesman at the furniture store for approximately the next two (2) years and eight (8) months.

During this period, Mitchell Barsky was never an officer or director of Tip Top. He did, however, attempt to take an active part in the management of the business, especially in ordering new merchandise. Mrs. Barsky objected strenuously to his attempt to assume such authority and informed the representatives of her suppliers that she was the only person at the store who was empowered to make orders. Tip Top was a fairly small operation with only four (4) or five (5) employees. Marjorie Barsky, in her capacity as president, managed the store and oversaw all facets of the operation.

Mitchell Barsky initiated contact with Kroehler and in September of 1978, falsely represented himself as the president of Tip Top. At about this time, the sales representative from Kroehler was informed several times by Marjorie Barsky that Mitchell Barsky had no power to order goods for Tip Top.

On September 29, 1978, Mitchell Barsky signed a security agreement granting American Acceptance Corporation a security interest in all inventory of the debtor. The rights in this security agreement were assigned to the plaintiff on October 10, 1979. Mitchell Barsky signed this contract and the accompanying U.C.C. financing statement in the falsely assumed capacity of president of Tip Top.

The main issue presented at the trial of Kroehler's complaint for relief from the automatic stay imposed by § 362 was whether or not Mitchell Barsky had either the express or apparent authority to execute these agreements. Kroehler asserts that Mitchell Barsky, as agent for his principal, Tip Top, was clothed with such authority.

It is a well settled principal of agency law that one who asserts that an agent has the power to act on behalf of his principal, bears the burden of proving it. *See e. g., Hartley v. United Mine Workers of America, Local No. 6321*, 381 Pa. 430, 113 A.2d 239 (1955); *Beachler v. Mellon-Stuart Co.*, 354 Pa. 341, 47 A.2d 147 (1946). The Supreme Court of Pennsylvania has stated that a " . . . party who seeks to charge a principal for the contracts made by his agent must prove the agents' authority." *Long v. Lehigh Coal & Navigation Co.*, 292 Pa. 164, 167, 140 A. 871, 874 (1929). *See also, Maslo Manufacturing Corp. v. Proctor Electric Co.*, 376 Pa. 553, 103 A.2d 743 (1954). Therefore, Kroehler bears the burden of proving Mitchell Barsky's express or apparent authority to execute the agreements in question.

There was only one witness called at trial; this was Marjorie Barsky, the president of Tip Top. She denied that Mitchell Barsky had any authority from her to enter into contracts on behalf of Tip Top. She also denied that he had ever served as an officer or director of the corporation.

The only possible basis for a finding of express authority would be the letter written by Mitchell Barsky to Kroehler and identified as "Exhibit C" at trial. In this letter, Mr. Barsky stated that Marjorie Barsky had resigned from the office of president; also, he signed the letter as president.

An assertion of authority by an agent is insufficient to clothe the agent with the authority being asserted. In *Long, supra*, the court stated that:

When one deals with an agent he is bound to ascertain the nature and extent of the agent's authority. He may not trust to a mere presumption of authority or to any mere assertion of authority by the agent; but must trace the authority to its source if he would be protected. *See also, Paper Mill Supply Co. v. Container Corporation of America*, 301 Pa. 62, 151 A. 588 (1930).

Kroehler failed to ascertain from the principal, (Tip Top), the existence of Mitchell Barsky's authority to enter into contracts on behalf of Tip Top. Plaintiff is not entitled to rely on the agent's own representations to establish express authority. Therefore, Exhibit C (letter of Mitchell Barsky to Kroehler) does not confer express authority on Mitchell Barsky.

The remaining issue is whether Mitchell Barsky had apparent authority to execute the security agreement and financing statement. Apparent authority is defined as the:

> ... power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407, 410 (Pa.1968).

*See also, William B. Tanner Co., Inc. v. WIOO, Inc.*, 528 F.2d 262 (3rd Cir. 1975); *Jacobson v. Leonard*, 406 F.Supp. 515 (E.D. Pa.1976).

In this case, no evidence was advanced by Kroehler showing that Marjorie Barsky, as president of Tip Top, ever consented to the execution of these documents. Nor did Kroehler make any showing that Mitchell Barsky was an officer of the corporation or was ever held out as an officer of the corporation. No evidence was introduced by Kroehler to establish a course of conduct by Marjorie Barsky which indicated that Mitchel Barsky exercised the apparent authority of president of Tip Top. No representatives or officers of Kroehler testified concerning the transactions at issue. The only witness was Marjorie Barsky. The entire thrust of her testimony was that Mitchell Barsky had no authority beyond being a salesman. Furthermore, she testified that the representative from Kroehler, a Mr. Pauli, was informed several times by her that Mitchell Barsky had no authority to order any goods.[2]

It is necessary that some conduct or act of the principal create the apparent authority. *Restatement of Agency (Second)* § 27, comment b. Kroehler has not shown any such manifestation which would tend to show that Mitchell Barsky had authority to act on behalf of Tip Top.

This court finds that Kroehler has failed to carry the required burden of proof. In failing to establish the authority of Mitchell Barsky to execute the agreements in question, the agreements must necessarily fail and are unenforceable against Tip Top. The inventory of Tip Top has been sold by the trustee and the proceeds have been deposited in an escrow account. The distribution of this property of the estate is awaiting this decision from the court. Kroehler's security interest is unenforceable. Therefore, Kroehler does not hold a claim secured by property of the estate and will not be considered a secured creditor for purposes of the distribution of the estate.

---

2. Mr. Pauli's testimony was not offered by the plaintiff at trial, nor was any explanation made by the plaintiff regarding his absence.