In re WINDSOR COMMUNICATIONS GROUP, INC. t/a Norcross-Rust Craft Greeting Card Publishers, Debtor.

FEBRUARY CORPORATION, Plaintiff,

v.

WINDSOR COMMUNICATIONS GROUP, INC. t/a Norcross-Rust Craft Greeting Card Publishers, Defendant.

Bankruptcy No. 82–03714K.
Adv. No. 82–2327K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 16, 1982.

Edward C. Toole, Nancy Alquist and Peter O. Clauss, Philadelphia, Pa., for defendant/debtor.

Robert Kargen and James Matour, Philadelphia, Pa., for plaintiff.

L.J. Lichtenstein, Philadelphia, Pa., for Creditors' Committee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on the complaint of February Corporation to modify the automatic stay imposed by Section 362 of the Bankruptcy Code. The Plaintiff, which is the lessor of the debtor's premises, requests the Court to grant relief from the stay to enable it to obtain possession of the property. The debtor opposes such relief and has filed a counterclaim alleging that the instant adversary proceeding had been settled and requests the Court to enforce the alleged settlement agreement. The Court, however, finds that no enforceable settlement agreement exists; and, therefore, an Order will be entered dismissing

the counterclaim and setting the matter for trial on the merits.[1]

The case at bench is of such a complex nature that a detailed review of the facts is warranted. The debtor, Windsor Communications Group, Inc.,[2] is a manufacturer of greeting cards and related sundries. An involuntary petition in bankruptcy was filed against the debtor in August of 1982. Windsor exercised its option to convert the matter to a case under Chapter 11 pursuant to the authority granted in Section 706 of the Bankruptcy Code. 11 U.S.C. § 706. Throughout all time periods relevant to the instant case, the debtor maintained a place of business at 950 Airport Road, West Chester, Pa.

This premises is a building of approximately 570,000 square feet which is utilized primarily for the storage of Windsor's substantial inventory. The corporate offices are also maintained on the site. Windsor has been unable to provide the plaintiff with the monthly rental due under the lease. Consequently, February filed a complaint for relief from the automatic stay in September of 1982. The case was originally called for trial on October 7, 1982. The matter was continued until October 15, 1982, pending the outcome of settlement negotiations. Representatives of the parties met for the entire day on October 13th. At the end of the day, it appeared that they had arrived at a settlement. This agreement was to be memorialized in writing and presented to the Court on the 15th.

Unfortunately, the principals of the plaintiff refused to accept the settlement agreement and directed their attorneys to proceed with the trial. Counsel for the debtor was informed of this development late in the day on October 14th. On the morning of October 15th, a conference was held in chambers. As a result of other pressing cases, as well as the fact that the Court did not anticipate the necessity of a lengthy trial in view of the original settle-ment discussions, the Court was forced to continue the matter until October 26th.

Immediately before the scheduled trial on the 26th, the debtor filed a counterclaim asserting that because the case had been settled by handshake agreement on October 13th, a trial was unnecessary and, furthermore, requesting the Court to enforce the alleged settlement agreement. Over the strenuous objections of counsel for the plaintiff, the Court elected to proceed upon the issues raised in the counterclaim before hearing the merits of the case. The Court hoped that protracted litigation would be avoided if a settlement agreement was extant. It would serve no useful purpose for the Court to entertain a lengthy trial if the matter had been settled, regardless of the protestations of one party whose expectations may not have been fully met by the proported settlement.

The Court, therefore, heard evidence on the counterclaim. At the conclusion of the hearing, the Court took the matter under advisement. An Order was entered continuing the trial on the merits and establishing a briefing schedule. After a complete review of the testimony of the witnesses and upon consideration of the well-written briefs submitted by counsel, the Court concludes that no enforceable settlement agreement was reached on October 13th. Although numerous interesting issues were raised concerning the validity of the settlement agreement, the Court has determined one question to be dispositive of the case. As a result, it will be unnecessary to address the remaining issues.

The key question before the Court is whether the representative of February had the necessary authority to bind his principal through the handshake agreement of October 13th. If no such authority exists, the other issues of contract law concerning the settlement will be rendered moot.

Present at the meeting on October 13th were: Charles Smith, the President of

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752 of the Rules of Bankruptcy Procedure.

2. The debtor hereinafter will be referred to as Windsor. The plaintiff will be referred to as February.

Windsor; Jordon Krown, a representative of February; a representative of a company interested in acquiring the space occupied by Windsor; and counsel for all parties. The main players, of course, were the representatives of the adversaries in the instant case.

Both parties are in agreement that the negotiating session of October 13th was very productive and that certain problems were resolved. Windsor asserts that a settlement of the entire case before the Court was reached. February, on the other hand, asserts that no settlement could exist because their agent lacked authority to settle the case. February, furthermore, maintains that numerous vital issues are not resolved and it would be impossible to effectuate a settlement agreement without a resolution of these outstanding problems.

Windsor produced testimony from several witnesses who stated that Jordon Krown wished to settle the entire matter at the conference on October 13th. Mr. Krown also stated that he was responsible for the real estate transactions of February. The witnesses also testified that Mr. Krown never gave them any indication that he did not have the authority to settle the case. Finally, Windsor introduced three (3) letters which Krown had signed as "V.P." of February Corporation.[3]

■ It is a well settled principal of agency law that one who asserts that an agent has the power to act on behalf of his principal, bears the burden of proving it. *See* e.g., *Hartley v. United Mine Workers of America, Local No. 6321,* 381 Pa. 430, 113 A.2d 239 (1955); *Beachler v. Mellon-Stuart Co.,* 354 Pa. 341, 47 A.2d 147 (1946). The Supreme Court of Pennsylvania has stated that a " . . . party who seeks to charge a principal for the contracts made by his agent must prove the agents' authority." *Long v. Lehigh Coal & Navigation Co.,* 292 Pa. 164, 167, 140 A. 871, 874 (1929). *See* also, *Maslo Manufacturing Corp. v. Proctor Electric Co.,* 376 Pa. 553, 103 A.2d 743 (1954). Therefore, Windsor bears the bur-

den of proving Mr. Krown's express or apparent authority to enter into the settlement agreement in question.

■ An assertion of authority by an agent is insufficient to clothe the agent with the authority being asserted. In *Long, supra,* the court stated that:

> When one deals with an agent he is bound to ascertain the nature and extent of the agent's authority. He may not trust to a mere presumption of authority or to any mere assertion of authority by the agent; but must trace the authority to its source if he would be protected.

*See* also, *Paper Mill Supply Co. v. Container Corporation of America,* 301 Pa. 62, 151 A. 588 (1930).

■ Windsor failed to ascertain from February, the authority of Mr. Krown to settle the case at bench. The debtor is not entitled to rely on the agent's own representations to establish express authority. The letters of Mr. Krown to Windsor, where he signed as vice-president, are insufficient to clothe him with express authority.

The remaining issue is whether Mr. Krown had apparent authority to settle the adversary proceeding. Apparent authority is defined as the:

> . . . power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power. *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 246 A.2d 407, 410 (Pa.1968).

*See* also *William B. Tanner Co., Inc. v. WIOO, Inc.,* 528 F.2d 262 (3rd Cir.1975); *Jacobson v. Leonard,* 406 F.Supp. 515 (E.D. Pa.1976).

It is necessary that some conduct or act of the principal create the apparent authority. *Restatement of Agency (Second),* § 27,

---

**3.** Exhibits D-3, D-4, D-5.

**608**

comment b. In the case at bar, there is no showing that February was aware of Mr. Krown's exercise of authority or that February acquiesced in his actions. Nor is there any evidence showing that February held Mr. Krown out as possessing such power. Without such acquiescence or manifestation of authority from the principal, the agent has no apparent authority to bind the principal.

Mr. Krown, therefore, entered into this settlement agreement without proper authority from his principal. In such case, the Court must find the agreement to be unenforceable and the counterclaim must fail. An Order will be entered dismissing the counterclaim and setting the case down for trial.